**Jack WEBB, Receiver of Employers Casualty Company and Employers National Insurance Company, et al., Appellant/Cross–Appellee,**

v.

**INTERNATIONAL TRUCKING COMPANY, INC., et al., Appellee/Cross–Appellant.**

No. 04–90–00012–CV.

Court of Appeals of Texas, San Antonio.

Sept. 29, 1995.

Rehearing Overruled Oct. 20, 1995.

Ruth Greenfield Malinas, Damon Ball, Ball & Weed, P.C., San Antonio, Christopher Fuller, Jane M.N. Webre, Scott, Douglass, Luton & McConnico, L.L.P., Austin, for Appellant.

Adan A. Gonzalez, III, James K. Jones, Jr., Mann, Jones & Gonzalez, L.L.P., Albert F. Muller, III, Laredo, Timothy Patton, Pozza & Patton, San Antonio, for Appellee.

Before HARDBERGER, GREEN and DUNCAN, JJ.

### ON MOTIONS FOR REHEARING AND MOTION FOR REHEARING EN BANC

HARDBERGER, Justice.

The previous opinion of July 8, 1992, is withdrawn. Trucking's Second Motion for Rehearing is granted. Employers' Motion for Rehearing is granted and their Motion for Rehearing En Banc is denied. The following opinion is substituted.

This case involves a third-party bad faith lawsuit against an insurance company. It involves questions of the status of such lawsuits, brought under the statutory remedies of the Insurance Code and the Deceptive Trade Practices Act (DTPA), in light of the Texas Supreme Court decisions in *Allstate Insurance Co. v. Watson*, 876 S.W.2d 145 (Tex.1994), and *Transport Insurance Company v. Faircloth*, 898 S.W.2d 269 (Tex.1995).

All parties have filed motions for rehearing and motions for rehearing en banc from this court's last opinion of July 8, 1992. The motions for rehearing are granted and the motions for rehearing en banc are denied. All previous opinions in this case are withdrawn and the following opinion is substituted.

### Appellate History

There is a long appellate history. The case was originally decided by this court on June 26, 1991. This first opinion held for the insurance companies involved, Employers Casualty Company (ECC) and Employers National Insurance Company (ENIC) on the DTPA claim. It also affirmed the trial

court's summary judgment in favor of ECC, ENIC, and two employees (Page and Veale) on the insurance claim. Finally, it affirmed attorneys fees and court costs against International Trucking Company, Inc. (Trucking). In short, Trucking, the plaintiff below, lost on all counts. Trucking filed a motion for rehearing which was granted, and on July 8, 1992, a new opinion was handed down, favoring Trucking on the DTPA claims, but continuing the affirmance of the summary judgment on the insurance claim against Trucking and continuing to award attorneys fees and court costs to Page and Veale. ECC, ENIC and Trucking all filed new motions for rehearing. While these rehearing motions were pending, ECC and ENIC went into receivership. This court, on February 8, 1994, stayed all proceedings because of the receivership. Meanwhile, *Watson, supra* and *Faircloth, supra,* were decided. The receiver has now moved that this court lift the stay, consider all briefs and argument, and rule. We do so with this opinion.

### Factual Background

A truck owned by the plaintiff, Trucking, was in a wreck near Goliad, Texas. The other vehicle involved was also a truck. This truck was owned by Williams Drilling Company of South Texas (Williams). Trucking then brought a common law negligence suit against Williams for being the cause of the wreck. Williams was insured by ECC. ECC's sister company was ENIC and both companies used the same letterhead and both were part of the Employers Insurance of Texas group. Though both insurance companies are named in the suit, and both appeal, we will refer only to ECC for simplicity's sake. Under normal circumstances the insurance company of the defendant wouldn't be named in a negligence lawsuit. They were in this case because of certain representations and actions taken by two insurance company employees, Evelyn Page (Page) and John Veale (Veale). Both Page and Veale were also sued individually by Trucking. Thus the suit became both a negligence case under the common law and a third-party bad faith lawsuit brought under the Insurance Code and the DTPA. Interestingly enough in the life of this dispute the original negli-

gence action was dropped, and only the statutory bad faith claims were left, and that is all this opinion deals with. Trucking took a non-suit against Williams without ever obtaining a judicial finding that Williams was liable for the wreck. Nor was there any type of agreement establishing that fact. The issue of who was at fault in the original suit was never resolved.

### Facts of the Bad Faith Claim

Evelyn Page was an adjuster for the defendant insurance company. She called Trucking's president, Samuel Alexander, identified herself as being with ECC, and said ECC would pay for the damages to the truck. She was not agreeable, however, to having the truck towed to Laredo for repairs. (Laredo being home to Trucking.) Instead, she directed Trucking to have the truck repaired at Victoria Mack Company in Victoria. This was done, and the truck was repaired there. However, by this time, another ECC employee, John Veale, had decided that their insured, Williams, was not at fault and therefore the insurance company was no longer willing to pay the bill. Trucking then filed suit against ECC. Trucking was not insured by ECC, and this suit was based on the premise of a third-party who had been mistreated and mislead by Williams' insurance carrier. Trucking's suit then is brought from the position of a third-party claimant.

The trial granted a summary judgment on all Insurance Code violations in favor of ECC, Page and Veale. The case went to trial on the DTPA claims, but the trial court directed verdicts for Page and Veale. The jury found that ECC and ENIC had violated the DTPA in several particulars, that its actions were a producing cause of $18,479 in actual damages, and that its actions were knowingly committed. Based on the "knowingly" finding, additional damages of $750,-000 were awarded Trucking. Post-trial the trial court reduced the additional damages to the amount permitted by the DTPA. Judgment was entered that Trucking recover $78,325.51 from ECC; Page and Veale were awarded $11,200 in attorneys fees and court costs from Trucking pursuant to their counterclaim asserting that the DTPA action

against them individually was groundless and brought in bad faith or for harassment.

ECC appeals the judgment against them brought under the DTPA. Trucking appeals the adverse summary judgment on their Insurance Code claims and also the award of attorneys fees and costs to Page and Veale.

### Insurance Code and DTPA Claims

ECC brings eleven points of error; Trucking raises three cross points. The critical issue in ECC's points of error is whether Trucking has standing to sue ECC under either the Insurance Code or the DTPA. ECC points out that Trucking is not their insured, and there has been no finding of liability against their insured, and Trucking is not a DTPA "consumer."

During the stay of this litigation due to the receivership of ECC and ENIC, the Texas Supreme Court decided both *Watson, supra,* and *Faircloth, supra.* The joint effect of these two cases have a dramatic impact on the instant litigation, and all future third-party bad faith claims. In fact, the only real issue is whether there will be any further third-party bad faith claims brought under the Insurance Code or the DTPA that will be upheld. Possible answers are "not many" or "none".

> A third party claimant has no contract with the insurer or the insured, has not paid any premiums, has no legal relationship to the insurer or special relationship of trust with the insurer, and in short, has no basis upon which to expect or demand the benefit of the extra-contractual obligations imposed on insurers under art. 21.21 with regard to their insureds.

*Watson,* 876 S.W.2d at 149.

> We hold that a third party claimant has no such direct cause of action under art. 21.21.

*Watson,* 876 S.W.2d at 146.

> Third parties negotiating a settlement with an insurer do not seek to purchase or lease any of the services of the insurer. They seek the proceeds of the policy. A party whose only relation to an insurance policy is to seek policy proceeds is not a "consumer."

... Transport next argues that there is no evidence that Faircloth had standing to recover for any "unconscionable course of conduct". We agree. Faircloth's lack of consumer status disposes of this issue.

*Faircloth,* 898 S.W.2d at 274.

The Receiver for ECC and ENIC, in their supplemental brief filed after *Watson* and *Faircloth* had been decided, takes the position that *Watson* bars all third-party bad faith suits brought under the Insurance Code and *Faircloth* bars all third-party bad faith lawsuits brought under the DTPA. Therefore, he concludes these two opinions are totally dispositive of this appeal. Considering the language quoted above from *Watson* and *Faircloth,* and the results reached by those cases, this is an understandable position. A close examination of *Watson* and *Faircloth,* though, indicates that *all* statutory causes of actions by third-parties are not barred, albeit they are significantly narrowed. The Supreme Court never says in these two opinions, or any other opinion, that *all* statutory third-party actions are barred against insurance companies. If the Court had meant to say that it no doubt would have done so with a simple declarative sentence. It did not do so. We conclude there are still limited instances in which a third party plaintiff can recover against an insurance company under the joint authority of Article 21.21 of the Insurance Code and Section 17.46 of the DTPA. We also conclude this is one of them. We affirm the judgment of Trucking against ECC and ENIC on the DTPA claims.

The strongest language in the two opinions favoring the defendant insurance companies, and relied upon by the Receiver, is found in the concurring opinion of Justice Enoch in *Faircloth:*

> Because Faircloth is a third party claimant, she has *no* statutory cause of action *based on unfair claim settlement practices.* (emphasis supplied)

*Faircloth,* 898 S.W.2d at 280.

Justice Enoch wrote the majority opinion in *Watson* and cites it as his authority for the above quote. But the phrase "based on unfair claim settlement practices" is an important qualifier. "Unfair claim settlement practices" is the basis for the Plaintiff's

claims and findings in both *Watson* and *Fair-cloth.* In the instant case it is not the basis for the lawsuit. The basis for this lawsuit is that an employee of EEC, who had the authority to do so, directed Trucking to take its wrecked truck to a particular shop and agreed to pay for it. Trucking (and the repair shop) relied, to their detriment as it turned out, on this representation of payment. ECC changed its mind and refused to pay for the repairs. Trucking received affirmative jury answers against both ECC and ENIC, with evidence to support them, of four DTPA violations that in all findings but one that tracked the language of Sec. 17.46 in their list of what is "false, misleading, or deceptive acts or practices." See Section 17.46(b)(14), (5), (12) and (23). Three of these findings will not support a verdict after *Watson* and *Faircloth.* However, one, Section 17.46(b)(12) will. We will discuss each finding after a brief discussion of significant prior cases, and the impact of *Watson* and *Faircloth.*

### A Brief Bad Faith Case Review

The granddaddy of bad faith cases is *G.A. Stowers Furniture Co. v. American Indemn. Co.,* 15 S.W.2d 544 (Tex.Comm'n App.1929, holding approved). *Stowers* held that a liability carrier owes its insured a duty of ordinary care in determining whether to accept or reject a settlement offer in a liability case within the insured's policy limits. Note that the duty spoken of was to the insured. Practically, however, the injured third party benefitted if the insurance company was negligent. This was true because then the insurance company had to pay the full judgment entered against the insured, and not merely the amount of the policy. The insured also benefitted because all of his or her potential liability was satisfied.

*Stowers* is still good law, but for many years there was no further significant development of bad faith law, either as it benefitted the insured or the injured third party. But in 1984, more than 50 years later, *Stowers* was back with statutory muscle in the case of *Allstate Ins. Co. v. Kelly,* 680 S.W.2d 595 (Tex.App.—Tyler 1984, writ ref'd n.r.e.). *Kelly* held the insurer's failure to settle on

behalf of its insured was actionable under the Insurance Code, Article 21.21 Sec. 16(a) and the DTPA, Sec. 17.46(a); Sec. 17.50(a)(3); and Sec. 17.50(a)(4). As in *Stowers,* both the insured and the injured third party were the ultimate beneficiaries of this opinion.

A trio of cases arrived in 1987–88 which dramatically changed, either by evolution or revolution depending on the viewpoint, insurance and bad faith law. These were the cases of *Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165 (Tex.1987); *Aranda v. Insurance Co. of North America,* 748 S.W.2d 210 (Tex.1988); and *Vail v. Texas Farm Bureau Mut. Ins. Co.,* 754 S.W.2d 129 (Tex.1988).

*Arnold,* an uninsured motorist case, involved a case where the insurance company refused to settle within limits, then a judgment was taken for more than the policy limits against the tortfeasor, and the insurance company was held liable for the entire amount, not just the policy limits. It introduced into the language of these cases the words "the duty of good faith and fair dealing". 725 S.W.2d at 167. This duty arose between the insurance company and the insured because of the "special relationship" between them, and the insurance companies unequal bargaining power which allowed insurance company's the power to take advantage of their insureds. *Id.* Subsequent suits to enforce "the duty of good faith and fair dealing" got shortened down, in the American way, to "bad faith" lawsuits. The beneficiary of this duty was the policy holder.

*Aranda* extended the duty of good faith and fair dealing to workers' compensation claims. The Court stated that an insurer owes an insured a duty "to deal fairly and in good faith with its insured in the processing and payment of claims ... This duty of good faith and fair dealing arises out of the special trust relationship between the insured and insurer." 748 S.W.2d at 212. Again the beneficiary of this doctrine was the policyholder's third-party beneficiary, i.e., the worker.

*Vail* held that a private cause of action does exist for violations of Article 21.21–2 by incorporation into both the DTPA and Article 21.21. 754 S.W.2d at 133–35. This was a

case where the Vails' house had burned down and the insurance company refused to pay. The Vails sued, not only for the value of their house, but for treble damages under the DTPA and Art. 21.21. The Court pointed out that the two acts are cross-referenced. They both grant relief for unfair or deceptive acts or practices in the business of insurance. Together they gain strength from each other.

Section 17.50(a)(4) of the DTPA incorporates section 16 of article 21.21 of the Insurance Code. Section 16 permits recovery by *any person* (emphasis supplied) who has been injured by another's engaging in:

[1] any of the practices declared to be unfair or deceptive by Section 4 of article 21.21;

[2] conduct defined in rules or regulations lawfully adopted by the Board under article 21.21 as unfair methods of competition and unfair or deceptive acts or practices in the business of insurance; or

[3] any practice defined by Section 17.46 of the Business & Commerce Code, as amended, as an unlawful deceptive trade practice.

754 S.W.2d at 132–33.

The joint incorporation of these two statutes make each more comprehensive. Art. 21.21(16) states relief is available to "any person". This is broader than the DTPA, which, by itself, is limited to consumers. But the list of proscribed "false, misleading, or deceptive acts or practices" is broader in the DTPA than Art. 21.21. So the larger scope of both is available as *Vail* pointed out and followed. It should be noted however that *Vail* involved an insured suing their own insurance company, and not an injured third party, suing someone else's insurance company. The stage was set for the cases of *Watson* and *Faircloth*.

### Watson

*Watson* is a 1994 case where the plaintiff, a car wreck victim, attempted to sue the defendant driver's insurance company directly for unfair claim settlement practices. Thus, the plaintiff is a third party claimant suing the Defendant's insurance company for failing to attempt in good faith to effectuate prompt settlement of her claim. The case is like *Vail* in that it involves an "unfair claim settlement practice", but unlike *Vail* in that it is not a policy holder suing,—but a third party claimant. The Court observes:

*Vail* remains the law as to claims for alleged unfair claim settlement practices brought by insureds against their insurers.

876 S.W.2d at 149. But also says:

*Vail* is predicated upon this Court's expressed belief that a special relationship exists between an insured and the insurer.

*Id.* The Court then finds that this difference is critical and that a third-party claimant lacks standing to sue the other driver's insurer directly for unfair claim settlement practices.

Unfair claim settlement practices are not listed (under Sec. 17.46 of the DTPA) and, therefore, they are not actionable under art. 21.21, section 16 of the Insurance Code.

*Id.*

The Court points out that the third party claimant "has no basis upon which to expect or demand the benefit of the extra-contractual obligations imposed on insurers under art. 21.21 with regard to their insureds." *Id.*

Important differences between *Watson* and the instant case are that (1) *Watson* is an "unfair claim settlement practices" case and the present case is not; (2) in *Watson* the third party claimant had "no basis upon which to expect or demand the benefit of the extra-contractual obligations". In the instant case they did: the insurance company told Trucking it would pay the claim, directed where the work was to be done, and the plaintiff had complied to its detriment; (3) the "unfair claim settlement practices" are not listed under Sec. 17.46 of the DTPA in *Watson*, but the "false, misleading, or deceptive acts or practices" found by the jury in this case are listed. Therefore, while *Watson* is instructive as to cases where the wrongful acts are not listed under Section 17.46 of the DTPA as wrongful acts, and the third party claimant has "no basis upon which to expect or demand the benefit of the extra-contractual obligations", these are not

the facts or the law in this case, and therefore *Watson* is not controlling to this dispute.

### Faircloth

*Faircloth* is also an "unfair claims settlement practices" case. This case deals with the DTPA. It holds that the Plaintiff, a third-party claimant who was dissatisfied with a settlement entered into on her behalf when she was a minor, did not have a cause of action under Section 17.46(b)(23) of the DTPA because she was neither a "consumer" nor had the insurance company "withheld goods or services as those terms are defined by the DTPA." *Id.* at 274.

> Third parties negotiating a settlement with an insurer do not seek to purchase or lease any of the services of the insurer. They seek the proceeds of the policy.

898 S.W.2d at 274.

The court held the plaintiff also did not have standing to recover for any "unconscionable course of conduct" under Section 17.50(a)(3) because actions under Section 17.50 are only available to consumers. The court compares Sec. 17.50 of the DTPA with art. 21.21 Sec. 16 which provides standing to "any person" who suffers injury resulting from acts or practices prohibited by Section 17.46 of the Texas Business and Commerce Code. *Id.* at 274. There can be no doubt that the joint cases of *Watson* and *Faircloth* eliminate the vast majority of claims that can be brought by third party claimants. In fact, we think that three of the four findings by the jury as the foundation for the judgment against ECC and ENIC can no longer be considered after *Watson* and *Faircloth.* The remaining finding though, in our opinion, will support the judgment. We will examine each.

### DTPA Findings in the Instant Case

#### DTPA Sec. 17.46(b)(23)

■ The basis for the court's rejection of the DTPA claim in *Watson* was that "unfair claim settlement practices" is not among the enumerated items defined by section 17.46 as an unlawful deceptive trade practice. 876 S.W.2d at 149. The court did not eliminate the broad language of the Art. 21.21, Sec. 16 of coverage to "any person" insofar as an enumerated DTPA violation is concerned. *Faircloth* though makes clear that some of the listed DTPA violations, *by their own words* (emphasis supplied), require the claimant to be a consumer. Section 17.46(b)(23) of the DTPA, under which Faircloth sued, was such a provision. This item reads:

> (23) the failure to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the *consumer* (emphasis supplied) into a transaction into which the *consumer* (emphasis supplied) would not have entered had the information been disclosed;

TEX.BUS. & COMM.CODE ANN. § 17.46(b)(23).

Trucking got a jury finding on this in its Question 1(4), but substituted the word "plaintiff" for "consumer". *Faircloth,* dealing with this same provision, makes clear this is a material alteration and an incorrect one. Trucking was not a "consumer"; it was a third party claimant. Therefore, this finding cannot stand.

#### DTPA Section 17.46(b)(14)

■ Trucking got a jury finding on this in their Question 1(1), and it tracks the statute. This reads:

> (14) misrepresenting the authority of a salesman, representative or agent to negotiate the final terms of a *consumer* (emphasis supplied) transaction;

TEX.BUS. & COMM.CODE § 17.46(b)(14).

Following the reasoning of *Faircloth,* this finding cannot stand. Trucking was not a consumer, and therefore was not involved in a consumer transaction.

#### DTPA Section 17.46(b)(5)

■ Trucking got a jury finding on this in their Question 1(2). This finding also accurately tracks the statute. This provision reads:

> (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities

which they do not have; (other provisions were omitted in the charge).

Tex.Bus. & Comm.Code Ann. § 17.46(b)(5).

Trucking, not being a consumer, did not acquire "goods or services". As in *Faircloth* where a similar claim was made and rejected, this finding cannot stand.

### *DTPA Section 17.46(b)(12)*

■ Trucking got a jury finding on this in the jury's answer to Question 1(3) which accurately tracked the statute, without alteration. This provision reads:

> (12) representing that an agreement confers or involves rights, remedies or obligations which it does not have or involve, or which are prohibited by law;

Tex.Bus. & Comm.Code Ann. § 17.46(b)(12).

This is a proper submission, does not require consumer status, and does not involve a seeking to acquire goods or services by purchase or lease. It is supported by sufficient evidence that ECC told Trucking it would pay for the repairs, directed where they were to be done, and then reneged on their agreement. The finding will support the judgment against ECC and ENIC entered by the trial court on the DTPA claim based on the representation of payment. We also find there is sufficient evidence to support the jury verdict as to the damages sustained by Trucking. We overrule ECC and ENIC's first two points of error.

The summary judgment in favor of ECC, ENIC, Page and Veale on the Article 21.21, Sec. 16 is reversed and rendered.

### ECC's Remaining Points

■ We now turn to ECC's remaining points of error. ECC raises a number of legal insufficiency points, but not factual insufficiency. It should also be noted that ECC put on no evidence in front of the jury; attorney fee evidence was put on before the court. ECC argues in its third and fourth points of error that Trucking's claim is for breach of an oral contract—Page's promise to pay for the repair of the truck—and is unenforceable by the statute of frauds. Tex. Bus. & Comm.Code Ann. § 26.01(b)(2) (Vernon 1987). Trucking's action is statutory, not contractual. Oral misrepresentations of payment are actionable under the Insurance Code and DTPA in and of themselves without regard to their enforceability as contracts. *See Royal Globe Ins. Co. v. Bar Consultants, Inc.*, 577 S.W.2d 688, 692 (Tex. 1979). We overrule ECC and ENIC's third and fourth points of error.

■ In its fifth point of error, ECC argues that there is no evidence of producing cause. According to ECC, a post-loss representation of insurance payment cannot be the producing cause of DTPA damages when the claimant would have repaired the damages and incurred the costs regardless of the representation. Employers cites *Royal Globe,* 577 S.W.2d at 694–95. That case is distinguishable in that the agent who made the misrepresentations was in the business of selling insurance, not the business of adjusting claims, and his post-loss representations were not within his actual or apparent authority. *Id.* at 695. In contrast, Page was an adjusting agent, and her representations were within the scope of her actual or apparent authority. We have reviewed the record and we conclude that considering only the evidence and inferences that support the finding, there was some evidence to support the jury's finding of producing cause. Samuel Alexander, the president of Trucking, testified that Trucking has a complete repair facility and does all of its own repairs on its trucks. They have seven full time mechanics. These mechanics had to be paid their regular salary while Victoria Mack Company was paid to do the work these employees should have been doing. Thus, because of the insurance company's demand to have the truck repaired at an outside facility, then its subsequent refusal to pay the bill, Trucking had to pay both the outside facility and their own repair people. Further, there was evidence from which the jury could have found, or reasonably inferred, that the trucks down time in Victoria was 22 days, longer than it would have been in Laredo, and drivers had to go back and forth from Laredo to Victoria to oversee the repairs and pick up the trucks. Mark-up on parts of an outside facility are absent on a in-house repair. Thus both extra labor and part costs were incurred because

of the insurance company's action. It should be noted that ECC did not raise any factual sufficiency points, but only legal sufficiency. We find that the evidence on producing cause of damages was legally sufficient. Point of error five is overruled.

■ Employer argues in its sixth and seventh points that there is no evidence to support the award of actual damages and attorney fees. Alexander testified to the precise amounts found by the jury. Certainly this is some evidence to support the jury's findings. It is true that the witnesses failed to use the words "reasonable and necessary," but they do not have to. The law has moved away from "magic words" as a requirement. Cross-examination and controverting proof are more effective ways of testing testimony than ritualistic word formulas. Impeaching cross examination occurred in this case as to certain fixed costs that would have occurred regardless of who did the repair. But this is evidence contrary to the jury's finding and therefore beyond the reach of a legal insufficiency review. No proof of offsets was made and no testimony allowed by ECC's counsel as to what Alexander's estimate would have been of truck repair in Laredo. Nor was there any request of a jury instruction not to consider any amount of damages Trucking would have suffered regardless of Page's representation of payment.

There was also some evidence to support the jury's finding of $1,000 attorneys fees. Trucking introduced the contingent fee letter and agreement and Alexander testified that he agreed to pay his attorney $1,000 in addition to one third of the recovery. These points are overruled.

In points eight and nine, ECC argues that the evidence is legally insufficient to support the answer to the first jury question.[1] Immediately preceding question one was this instruction:

> You are instructed that an employer is bound by and responsible for the acts and conduct of its employees, which acts are done within the course and scope of employment of the employees.

"Course and scope of authority" was not defined.

The jury was not asked to find whether any of the acts or practices listed in question one were committed by an employee or agent of ECC while acting in the course and scope of his or her employment or authority. ECC objected to this omission. Employers argues that without such a finding, or without a finding that the misrepresentations were made by one acting within his or her actual or apparent authority, the evidence is legally insufficient to support the answers to question one.

■ We disagree. Once again, the issue in this case is not breach of the insurance contract. Nor is it ECC's fraud or negligence. Therefore, the question is not whether Page had authority to bind ECC to pay

---

1. We quote question number one and its answers. In brackets following each subsection is the DTPA section which the language of the question tracks.

*QUESTION NO. 1*
Do you find that any of the following Defendants engaged in false, misleading, or deceptive acts or practices in their conduct with the Plaintiff surrounding the matter of the claim for payment for the damage to Plaintiff's truck?
The term false, misleading or deceptive acts or practices means anyone of the following:
(1) Misrepresenting the authority of a salesman, representative, or agent to negotiate the final terms of a consumer transaction; [17.46(b)(14)]
(2) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities which they do not have; [17.46(b)(5)]
(3) Representing that an agreement confers or involves rights, remedies or obligations which it does not have or involve, or which are prohibited by law; [17.46(b)(12)] or
(4) The failure to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the Plaintiff into a transaction into which the Plaintiff would not have entered had the information been disclosed. [17.46(b)(23)]

Answer "Yes" or "No" for each Defendant:

| | | Yes | No |
|---|---|---|---|
| (a) | Defendant Employers Casualty Company | X | |
| (b) | Defendant Employers National Insurance Company | X | |

the repair costs, but whether ECC was liable for misrepresenting the authority of its employee or permitting the employee to do so. *George Pharis Chevrolet, Inc. v. Polk*, 661 S.W.2d 314, 316–17 (Tex.App.—Houston [1st Dist.] 1983, no writ). It is undisputed that Page was an employee of ECC when she made her representations to Alexander. Veale testified that as a "fast track" adjuster, Page could verify the amount of damages, write or order a check, and close the file. Page, herself, testified that she had authority to approve these claims. Alexander testified that he believed Page was authorized by ECC to agree to repair Trucking's truck, and that Veale reneged on that promise when the file reached his hands. We hold that the absence of a "course and scope" or an "actual or apparent authority" issue is not error because they were irrelevant to Trucking's cause of action. *Id.*

Employer contends that Williams was insured by ECC and that Page was working for ECC. It argues that there is no evidence of any relationship between ECC and ENIC that would make ENIC liable for the actions of an ECC employee. We disagree. The evidence is that ECC and ENIC are sister companies. Veale testified that he is employed by Employers Insurance Group of companies, which consists of, among other companies, ECC and ENIC. He testified that he works for each of the companies. His letterhead bears the name of both ECC and ENIC, and he acknowledged that might confuse the reader regarding which company he worked for. While ECC may be the only company that insured Williams, Trucking's suit is to recover damages for false, misleading or deceptive acts or practices committed by Employers' agents. Veale is one of those agents, and he is employed by ENIC. The jury found that ENIC committed such acts or practices. There is more than a scintilla of evidence that ENIC is liable to Trucking.

ECC next proceeds to challenge the legal sufficiency of the evidence to support a positive finding on each of the four deceptive acts or practices queries submitted to the jury in question one. Because the four queries in question one were presented in the disjunc-

tive, if there is any evidence to support any one of them, the jury finding must be upheld.

■ The third act or practice described under question one is derived from DTPA § 17.46(b)(12)—whether ECC represented that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law. ECC asserts that there can be no recovery under this section, even by an insured, for the mere denial of liability under an insurance policy following a loss. It cites *Jay Freeman Co. v. Glens Falls Ins. Co.*, 486 F.Supp. 140, 142 (N.D.Tex.1980), and *American Ins. Co. v. Reed*, 626 S.W.2d 898, 904–05 (Tex.App.—Eastland 1981, no writ).

The instant case is much different from *Reed* where no misrepresentations were made apart from denial of coverage. 626 S.W.2d at 904–05. This action is not for denial of coverage; it asserts false, deceptive and misleading acts or practices were committed by Employers. Without solicitation ECC contacted Trucking and indicated that Trucking would have its truck repaired, the only stipulation being that the repairs must be made in the vicinity of the accident. After the repairs were made as instructed by ECC, ECC refused to pay for them. Recovery under section 17.46(b)(12) may be predicated upon misrepresentation of coverage. *Hope v. Allstate Ins. Co.*, 719 S.W.2d 634, 637–38 (Tex.App.1986); *Tidelands Life Ins. v. Harris*, 675 S.W.2d 224, 226 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). A positive answer to this query is supported by legally sufficient evidence. Points of error eight and nine are overruled.

■ In its tenth point of error ECC challenges the award of additional damages under the DTPA. A plaintiff may recover up to three times its actual damages if the jury finds the defendant violated the act "knowingly." DTPA § 17.50(b)(1). ECC argues that even if misrepresentations occurred, there is no evidence that they were committed knowingly by an ECC employee acting within the scope of his or her employment. ECC's theory is that there can be no recovery unless Page, at the time she allegedly promised to pay for the repairs, must have known in fact that the claim would not be

paid. ECC contends the evidence conclusively shows that at the time of her promise, which was prior to any investigation, she could not have known that the claim would not be paid.

 Actual awareness of the falsity, deception, or unfairness of the act or practice may be inferred when objective manifestations indicate the person acted with actual awareness. DTPA § 17.45(9); *Jim Walter Homes, Inc. v. Valencia,* 690 S.W.2d 239, 242 (Tex.1985). The misrepresentation that injured Trucking is that Page had authority to authorize repair of its truck at the time she called Alexander. There is evidence in the record from which the jury could have inferred that this misrepresentation was committed knowingly. Page told Alexander that she represented Williams' insurer and that he should have the truck repaired at a shop near the accident site. She put him in touch with Liest, who had the truck towed to Victoria Mack where it was repaired. Victoria Mack billed the repairs to ECC. ECC then refused to pay for the repairs. Page testified that she had authority to approve such claims, but she also testified that she was told by ECC never to authorize repairs. She also testified that authorization of repairs could not be made until ECC determined that its insured was liable for the damage.

Thus, it can reasonably be inferred that if Page told Alexander to have the truck repaired, knowing that she did not have this authority or knowing that payment for the repairs depended on an investigation regarding Williams' liability, her representation that ECC would pay for the repairs was committed with actual awareness of its falsity or deception. The tenth point of error is overruled.

In its eleventh and final point, ECC contends that the court erred in not considering its counterclaim for damages based on its contention that Trucking's action was groundless and brought in bad faith or for the purpose of harassment. DTPA § 17.50(c). Because we have determined that Trucking's claim is not groundless, we overrule this point of error.

## Trucking's Second and Third Cross Points

 Trucking complains, on cross-points of error, that the trial court erred in granting the motions for summary judgment mentioned above, and awarding attorneys fees and court costs to Page and Veale. Even though we are in agreement with the granting of the summary judgment to Veale (though not to Page), it does not automatically follow that we agree there should be attorney's fees and court costs awarded against Trucking. Art. 17.50 of the DTPA furnishes a wronged defendant certain protections against a "bad faith" law suit.

> Art. 17.50(c) On a finding by the court that an action under this section was groundless and brought in bad faith, or brought for the purpose of harassment, the court shall award to the defendant reasonable and necessary attorney's fees and court costs.

TEX.BUS. & COMM.CODE ANN. § 17.50(c).

The leading case on this article of the DTPA is *Donwerth v. Preston II Chrysler–Dodge,* 775 S.W.2d 634 (Tex.1989). The case emphasizes that the judge makes this decision, and not the jury.

> The court, not the factfinder, must determine the existence of groundlessness, bad faith and harassment under section 17.50(c).

*Id.* at 637. The Supreme Court then examines the meaning of the words used.

> "Groundlessness" under the DTPA has the same meaning as "groundlessness" under Rule 13 of the Texas Rules of Civil Procedure: "[N]o basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law."

*Id.* "Bad faith" is not defined in the opinion, but harassment is specifically discussed:

> Section 17.44 of the DTPA provides that the Act "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to se-

cure such protection." This legislative direction for a liberal construction to protect consumers means, at the very least, that the requirement that the suit be brought "for purposes of harassment" must mean it was brought for the *sole* purpose of harassment.

*Id.* at 638.

In *Donwerth* it was held as a "matter of law" (*Id.,* at 637) that the claim was not groundless. There is sufficient evidence that the individuals in the instant case did mislead the Plaintiffs to their detriment, and that their employer was found guilty of DTPA violations through their acts. Therefore we cannot conclude that to include them in a suit that was successful against their employer could be considered for the "sole purpose of harassment", or "without any basis in law or fact." We hold, as the court did in *Donwerth,* that as a matter of law these claims do not meet the necessary requirements of 17.50(c).

■ Page and Veale argue, and this court agreed in its July 8, 1992 opinion that Trucking waived its right to complain of the trial court's finding by failing to object or file a postjudgment motion. Upon further reflection, we hold that Trucking did not waive any rights, and that the trial court was fully apprised of Trucking's position and its unhappiness and objection to the court's ruling. Texas Rules of Appellate procedure require the following for preservation of appellate complaints:

(a) General Rule. In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make *if the specific grounds were not apparent from the context.* (emphasis supplied) . . .

TEX.R.APP.P. 52(a).

Trucking made clear on numerous occasions that they did not believe their claims against Page and Veale were "groundless." Trucking alleged its claims and why it felt they had a viable claim against these individuals in its petition, in its response to the summary judgment, in their response to the

motion for directed verdict, and in its argument during the charge conference. It is very true that a trial court is owed the duty by a party to be apprised of any complaints and be given an opportunity to cure the error.

Trucking complied with the spirit and purpose of Rule 52(a) by "objecting" in its various arguments to a finding that its DTPA claims were not supported by the evidence or the law, and it obtained a "ruling" in the judgment "overruling" its objection. Trucking also complied with the letter of Rule 52(a) by making a "request" that the trial court find that the claims were not groundless, etc., when it asked that the court submit its DTPA claims because they were supported by the evidence and the law, and obtaining a "ruling" when the trial court made the groundless, etc., finding in its judgment. No more is required.

Analogous to this situation is Rule 52(d), TEX.R.APP.P., which expressly provides that a losing party in a trial bench is not required to file a motion for new trial to complain on appeal that the evidence was legally or factually insufficient to support a finding of fact. In summary, there was no waiver on the part of Trucking.

### Conclusion

We affirm the summary judgment in favor of Veale, because Alexander testified he wasn't aware of any misrepresentations by him. We reverse the summary judgments in favor of ECC, ENIC, and Page in light of our holding that a third-party claimant may bring a claim under Insurance Code article 21.12, section 16. On this ground, the judgment against ECC and ENIC is affirmed. As against Page, however, since no DTPA question was submitted as to her, the judgment is reversed and remanded for further proceedings consistent with this opinion. We reverse and render the judgment awarding attorney's fees and court costs to Page and Veale.