Andrew **OSBORNE** and Ruby Lee Osborne, Appellants,

v.

ST. LUKE'S EPISCOPAL HOSPITAL; Texas Heart Institute; Richard Bowman, M.D.; Denton Cooley, M.D.; Wayne E. Dear, M.D.; Patrick Hogan, M.D.; Richard E. Paulus, M.D.; Cheryl Forbes Yaroch, R.N.; and Southwest Cardiovascular Consultants, P.A., Appellees.

No. 01–94–00594–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 18, 1996.

Rehearing Overruled Feb. 8, 1996.

Richard C. Smith, Alma Willarreal, Edinburg, Keith C. Livesay, McAllen, for Appellants.

John Roberson, Ann Watson, Deanna H. Livinston, Karen L. Schneider, John C. Marshall, Todd J. Broussard, Timothy Riley, Gary Jewell, T. Marc Calvert, Sarah L. Herr, Houston, for Appellees.

Before O'CONNOR, HUTSON–DUNN and ANDELL, JJ.

## OPINION

O'CONNOR, Justice.

This is an appeal in a medical malpractice case. Andrew Osborne had heart surgery on October 29, 1987, and a rubber tube was unintentionally left in his chest. The rubber tube was removed on December 14, 1987 during a second surgery. Andrew and his wife Ruby Lee Osborne filed suit on February 28, 1990.

The trial court rendered a take-nothing summary judgment against the Osbornes because the court determined the suit was barred by the two-year statute of limitations. The Osbornes appeal in a single point of error, claiming that the trial court erred in granting summary judgment. We affirm.

### Jurisdiction

Before we reach the merits of the appeal, we must determine whether we have jurisdiction. *Protestants v. American Pubs, Inc.,*

787 S.W.2d 111, 113 (Tex.App.—Houston [1st Dist.] 1990, writ denied). Although the parties do not contest jurisdiction, this appeal presents what may be a novel jurisdictional dilemma.

Appellants Andrew Osborne and Ruby Lee Osborne initially filed suit against 28 defendants.[1] The Osbornes filed motions to nonsuit Doctors Jain and Singleton, which the trial court granted on January 28, 1991. On February 13, 1991, the Osbornes filed their first amended petition against 25 defendants, dropping from the lawsuit Physical Medicine. On April 12, 1991, the Osbornes filed their second amended petition against 19 defendants, dropping from the lawsuit Doctors Cunningham, Davis, Duncan, and Gerson and L. John Davis, M.D., P.A. and Singleton Associates, P.C. On May 28, 1991, the Osbornes filed a motion to nonsuit Doctors Cunningham and Davis, which the trial court granted.

On May 13, 1991, the Osbornes filed their third amended petition, which as supplemented with affidavits on May 24, 1991 constitutes their live pleadings in this cause. The third amended petition names 19 defendants.[2] On October 23, 1991, the Osbornes nonsuited Nurses Odegaard and Ratliffe,[3] leaving 17 defendants. The transcript does not demonstrate that the Osbornes ever properly sued or served eight of the remaining defendants

(Doctors Blanc and Totz; Nurses Lea Bundick and Lisa Bundick; Cardiac Surgery Associates; Jack Blanc, M.D., P.A.; Surgical Associates of Texas; and T. Kotz, M.D., P.A.), which left a total of nine defendants in the lawsuit.

On November 19, 1991, the trial court signed an order on which someone, presumably the trial judge, wrote the words "Final Judgment." This judgment was based on the remaining nine defendants' motions for summary judgment, and the trial court rendered judgment that the Osbornes take nothing in their suit against St. Luke's; Texas Heart Institute; Doctors Bowman, Cooley, Dear, Hogan, and Paulus; Nurse Yaroch; and Southwest Cardiovascular Consultants, P.A.[4] The November 19 summary judgment disposed of the nine defendants named above, but did not mention the eight nonappearing defendants that were not properly sued or served—Doctors Blanc and Totz; Nurses Lea Bundick and Lisa Bundick; Cardiac Surgery; Jack Blanc, M.D., P.A.; Surgical Associates; and T. Kotz, M.D., P.A. Although the November 19 summary judgment did not explicitly dispose of the eight nonappearing defendants that were not properly sued or served, such a judgment is normally considered final for purposes of appeal and the case stands as if there had been a discontinuance as to the parties not served. *Youngstown Sheet & Tube Co. v. Penn*, 363

---

1. The original defendants were: (1) St. Luke's Episcopal Hospital; (2) Texas Heart Institute; (3) Jack Blanc, M.D.; (4) Richard Bowman, M.D.; (5) Denton Cooley, M.D.; (6) Gene Cunningham, M.D.; (7) L. John Davis, M.D.; (8) Wayne E. Dear, M.D.; (9) J. Michael Duncan, M.D.; (10) Paul Gerson, M.D.; (11) Patrick Hogan, M.D.; (12) Anjali Jain, M.D.; (13) T. Kotz, M.D.; (14) Richard E. Paulus, M.D.; (15) Edward B. Singleton, M.D.; (16) K. Bhojwani, R.N.; (17) Lea Bundick, R.N.; (18) Lisa Bundick, R.N.; (19) Cheryl Forbes, R.N.; (20) Peggy Odegaard, R.N.; (21) Cardiac Surgery Associates; (22) Jack Blanc, M.D., P.A.; (23) L. John Davis, M.D., P.A.; (24) Physical Medicine; (25) Singleton Associates, P.C.; (26) Southwest Cardiovascular Consultants, P.A.; (27) Surgical Associates of Texas; and (28) T. Kotz, M.D., P.A.

2. The defendants named in the third amended petition are: (1) St. Luke's Episcopal Hospital; (2) Texas Heart Institute; (3) Jack Blanc, M.D.;

(4) Richard Bowman, M.D.; (5) Denton Cooley, M.D.; (6) Wayne E. Dear, M.D.; (7) Patrick Hogan, M.D.; (8) T. Kotz, M.D.; (9) Richard E. Paulus, M.D.; (10) Lea Bundick, R.N.; (11) Lisa Bundick, R.N.; (12) Peggy Odegaard, R.N.; (13) K. Bhojwani Ratliffe, R.N.; (14) Cheryl Forbes Yaroch, R.N.; (15) Cardiac Surgery Associates; (16) Jack Blanc, M.D., P.A.; (17) Southwest Cardiovascular Consultants, P.A.; (18) Surgical Associates of Texas; and (19) T. Kotz, M.D., P.A.

3. This motion for nonsuit or notice of nonsuit is not in the transcript, but the trial court referred to the nonsuit in the July 21, 1992 "final judgment" when the court dismissed Nurses Odegaard and Ratliffe.

4. This judgment did not contain a "Mother Hubbard" clause. *See Mafrige v. Ross*, 866 S.W.2d 590, 590 n. 1 (Tex.1993).

S.W.2d 230, 232 (Tex.1962); *Moody v. Smoot,* 78 Tex. 119, 14 S.W. 285, 287 (1890); *Ballard v. Portnoy,* 886 S.W.2d 445, 446 (Tex.App.— Houston [1st Dist.] 1994, no writ); *see* TEX. R.CIV.P. 161.

On December 18, 1991, the Osbornes filed a motion for new trial and a motion to set aside the previous nonsuit of Doctor Duncan. On February 3, 1992, the motion for new trial was overruled by operation of law even though the trial court signed an order overruling both motions on February 5, 1992. TEX.R.CIV.P. 329b(c), 4.

On February 5, 1992, the Osbornes filed a cost bond to perfect an appeal, and the Texas Supreme Court transferred the appeal to the Corpus Christi Court of Appeals. *See* TEX. CIV.PRAC. & REM.CODE § 73.001 (1988). On April 14, 1992, the Corpus Christi Court sent notice to the parties of the following defects in the transcript: (1) the transcript did not contain the live pleadings; (2) the judgment did not appear to be final as it did not appear to dispose of all parties to the suit; and (3) the motion for new trial was not contained in the transcript. The Osbornes filed a response and a motion to file a supplemental transcript.[5] On May 21, 1992, the Corpus Christi Court dismissed the appeal for want of jurisdiction, stating:

> The Court, having examined and fully considered the transcript and the appellants' response to this Court's notice, is of the opinion that the judgment from which this appeal is taken is not a final judgment and the appeal should be dismissed for want of jurisdiction. The appellants' motion to determine finality of the judgment, abate the appeal, permit the filing of supplemental transcript and to extend appellate deadlines is dismissed.

*Osborne v. St. Luke's Episcopal Hosp.,* No. 13–92–00194–CV (Tex.App.—Corpus Christi May 21, 1992, no writ) (not designated for publication).

On July 21, 1992, after the Osbornes' first appeal was dismissed, the trial court signed a "final judgment" and order in which the trial court (1) dismissed for failure to properly sue or serve Doctors Blanc and Kotz; Nurses Lea Bundick and Lisa Bundick; Cardiac Surgery; Jack Blanc, M.D., P.A.; Surgical Associates; and T. Kotz, M.D., P.A. and (2) dismissed due to the October 23, 1991 nonsuit Nurses Odegaard and Ratliffe.[6] At the same time the trial court also granted the motions for summary judgment of St. Luke's; Texas Heart Institute; Doctors Bowman, Cooley, Dear, Hogan, and Paulus; Nurse Yaroch; and Southwest.

On August 10, 1992, the trial court signed an order (a) voiding the November 19, 1991 summary judgment, (b) granting the Osbornes' motion to set aside the previous nonsuit of Doctor Duncan, and (c) again overruling the Osbornes' motion for new trial. The Osbornes attempted a second appeal in September 1992. *Osborne v. St. Luke's Episcopal Hosp.,* No. 01–92–01146–CV, 1993 WL 460062 (Tex.App.—Houston [1st Dist.] Nov. 10, 1993, no writ) (not designated for publication). At that time, we apparently assumed that the trial court properly signed both (1) a judgment on July 21, 1992 and (2) an order on August 10, 1992 (a) voiding the November 19, 1991 summary judgment, (b) granting the Osbornes' motion to set aside the previous nonsuit of Doctor Duncan, and (c) again overruling the Osbornes' motion for new trial. On November 10, 1993, we dismissed the appeal for want of jurisdiction because we believed the appeal to be interlocutory as the trial court had not yet disposed of the Osbornes' claims against Doctor Duncan.

On February 16, 1994, the trial court signed an order severing the Osbornes' cause of action against Doctor Duncan from their causes of action against St. Luke's; Texas Heart Institute; Doctors Bowman, Cooley, Dear, Hogan, and Paulus; Nurse Yaroch; and Southwest. The parties apparently con-

---

**5.** Neither the transcript from cause number 13–92–00194–CV nor the Osbornes' response and motion to file a supplemental transcript is in the transcript in the present appeal.

**6.** This judgment did not contain a "Mother Hubbard" clause.

sider the February 16, 1994 order to be the final judgment. On March 11, 1994, the Osbornes filed a motion for new trial from the February 16, 1994 judgment. On May 24, 1994, the trial court overruled this motion for new trial.

On May 18, 1994, the Osbornes filed their cost bond in the present appeal. On May 4, 1995, we ruled that the cost bond was timely filed based on the mailbox rule, TEX.R.APP.P. 4(b). *Osborne v. St. Luke's Episcopal Hosp.*, No. 01–94–00594–CV (Tex.App.—Houston [1st Dist.] May 4, 1995, no writ) (not designated for publication). The reasoning of our May 4 ruling was erroneous, however, because we assumed the February 16, 1994 order made the November 19, 1991 summary judgment a final judgment.[7] It is now apparent that either the November 19, 1991 summary judgment is the final judgment or the February 16, 1994 severance order made the July 21, 1992 summary judgment the final judgment.

Before this cause was submitted, we issued a September 5, 1995 order stating we were of the tentative opinion that the trial court's November 19, 1991 summary judgment was a final judgment and we should dismiss the appeal for want of jurisdiction because the Osbornes failed to perfect a timely appeal.[8] *Osborne v. St. Luke's Episcopal Hosp.*, No. 01–94–00594–CV (Tex.App.—Houston [1st Dist.] Sept. 5, 1995, no writ) (not designated for publication); TEX.R.APP.P. 60(a)(2). At the time we issued the September 5 order, we were not aware of the previous appeal to the Corpus Christi Court of Appeals. The Osbornes filed a response informing us of the Corpus Christi appeal and that court's May 21, 1992 judgment.

Without a copy of the transcript filed in cause number 13–92–00194–CV, it is unclear from a reading of the Corpus Christi Court's May 21, 1992 judgment whether the appeal in that court was dismissed because (1) the Osbornes failed to provide the Corpus Christi Court with an adequate transcript, *i.e.*, the November 19, 1991 summary judgment could be a final judgment, but the court could not make that determination due to omissions in the transcript, or (2) the Corpus Christi Court determined the underlying judgment was inherently interlocutory after examining an adequate record.

Because a proper interpretation of the Corpus Christi Court's judgment would require this Court to examine the transcript that was before the Corpus Christi Court, the Chief Justice of this Court on September 21, 1995 wrote the Texas Supreme Court and requested that this cause be transferred back to the Corpus Christi Court so that court could resolve the jurisdictional question by interpreting its own judgment and record.[9] *See generally Miles v. Ford Motor Co.*, 38 Tex.Sup.Ct.J. 1202 (Sept. 14, 1995) (discussing transfer of appeals between courts of appeals), *opinion substituted*, 39 Tex.Sup. Ct.J. 173, 914 S.W.2d 135 (1995). On October 16, 1995, the Texas Supreme Court characterized the Chief Justice's letter as a motion to transfer and overruled the "motion" without any discussion.

Based on the record before us, it appears that the November 19, 1991 summary judgment was final for purposes of appeal. If the November 19 summary judgment was a final judgment and the Corpus Christi Court dismissed the first appeal because the Osbornes failed to file an adequate transcript, then the Osbornes have failed to cure that defect, the current appeal is untimely, and we have no jurisdiction over the appeal. Without the transcript in cause number 13–92–00194–CV, however, we cannot determine why the Cor-

---

7. The November 19, 1991 summary judgment was not included in the six-volume transcript filed on June 15, 1994, but was included in the first supplemental transcript filed on September 1, 1995.

8. If the November 19, 1991 summary judgment was a final judgment, then the Osbornes had until February 18, 1992 to perfect a timely appeal. TEX.R.APP.P. 41(a)(1), 5. The Osbornes' first appeal was perfected on February 5, 1992.

9. The Clerk of this Court sent copies of the letter to the parties.

pus Christi Court dismissed the appeal.[10]

All parties to this appeal have proceeded on the basis that the February 16, 1994 severance order made the July 21, 1992 summary judgment the final judgment.[11] We do not consider it appropriate for us to request the transcript in cause number 13–92–00194–CV from Corpus Christi and to review the judgment of a sister court of appeals *in the same case.* We, therefore, will presume the judgment became final on February 16, 1994 and will presume we have jurisdiction over the appeal.[12]

### Merits of the Appeal

In their sole point of error, the Osbornes claim the trial court erred in granting summary judgment because (1) the appellees did not meet their burden to establish the date on which the limitations period commenced and (2) the appellees did not move for summary judgment on all the Osbornes' claims. We disagree.

■ We review the grant of a motion for summary judgment under the following standards: (1) the summary judgment movants have the burden of showing there is no genuine issue of material fact as to one or more of the essential elements of the plaintiffs' cause of action and that the movants are entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovants will be

taken as true; and (3) every reasonable inference must be indulged in favor of the nonmovants and any doubts resolved in their favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 549 (Tex.1985). Parties moving for summary judgment under a statute of limitations must conclusively establish that the statute of limitations barred the lawsuit. *Chambers v. Conaway,* 883 S.W.2d 156, 158 (Tex.1993).

The statute of limitations for medical malpractice actions provides:

> Notwithstanding any other law, no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed. . . .

Medical Liability and Insurance Improvement Act of Texas, TEX.REV.CIV.STAT. art. 4590i, § 10.01 (Supp.1996). This period of limitations runs from any one of three events: (1) the date the breach or tort occurred; (2) the date the health care treatment that is the subject of the claim is completed; or (3) the date the hospitalization for which the claim is made is completed. *Chambers,* 883 S.W.2d at 158; *Kimball v. Brothers,* 741 S.W.2d 370, 372 (Tex.1987). Here, to be a timely suit, an event giving rise to liability must have occurred after December 15, 1987.[13]

■ In *Kimball,* the Texas Supreme Court clarified when to apply each of the

---

**10.** It is conceivable that the transcript in cause number 13–92–00194–CV contains documents which are not included in the transcript filed in this appeal and that these documents demonstrate that the November 19, 1991 summary judgment is inherently interlocutory.

**11.** The Osbornes' May 18, 1994 cost bond names the appellees only as "St. Luke's Episcopal Hospital et al." We consider the appellees to be St. Luke's Episcopal Hospital; Texas Heart Institute; Richard Bowman, M.D.; Denton Cooley, M.D.; Wayne E. Dear, M.D.; Patrick Hogan, M.D.; Richard E. Paulus, M.D.; Cheryl Forbes Yaroch, R.N.; and Southwest Cardiovascular Consultants, P.A.

**12.** We believe the confused procedural status of this case presents a compelling argument why a

subsequent appeal after a remand or a dismissal for want of jurisdiction should always be to the same court of appeals that heard the initial appeal.

**13.** The Act provides that proper notice "shall toll the applicable statute of limitations to and including a period of 75 days following the giving of notice." TEX.REV.CIV.STAT. art. 4590i, § 4.01(c) (Supp.1996). The Osbornes sent notice and later filed suit on February 28, 1990. Thus, counting backwards, any event occurring after two years and 75 days before February 28, 1990 is within the limitation period. December 15, 1987 is two years and 75 days before February 28, 1990.

Act's three limitations-triggering events. *Kimball,* 741 S.W.2d at 372. The *Kimball* court stated that the three-date scheme was intended to aid a plaintiff who had difficulty ascertaining a precise date on which his injury occurred, specifically in circumstances in which the claim arose from a course of treatment or a period of hospitalization that extended for a period of time. *Id.* When the precise date of the specific breach or tort is ascertainable, however, the Act requires that the limitation period run from the date of the breach or tort. *Id.; Casey v. Methodist Hosp.,* 907 S.W.2d 898, 902–03 (Tex.App.— Houston [1st Dist.] 1995, no writ).

 The Osbornes' live petition alleges "a foreign object was left in [Andrew Osborne's] body while he was under anesthesia and certain medical personnel performed open heart surgery on him." In the Osbornes' response to Doctors Cooley and Duncan's motion for summary judgment, the Osbornes also state,

> The first date when Plaintiffs Osborne could have known or should have suspected Defendants' negligence was on or about December 13, 1987, when during Andrew Osborne's readmission to St. Luke's Episcopal Hospital for continuing care and treatment, Plaintiffs Osborne were advised by the health care providers of the need to surgically remove a "foreign object" from Plaintiff Andrew Osborne's chest cavity which was related to his previous cardiac surgery.

It is undisputed that the previous cardiac surgery occurred on October 29, 1987. Finally, Andrew Osborne testified Doctor Paulus told him on December 13, 1987 that the second surgery was necessary because "[w]e left some rubber or surgical tubing in you."

The Osbornes argue that the precise date of the specific tort is not ascertainable because there was conflicting evidence about which doctor performed the October 29, 1987 surgery and whether the Osbornes could readily ascertain the date of the tort. We are not persuaded by this argument. The Osbornes' response to Doctors Cooley and Duncan's motion for summary judgment judicially admits that they could and should have known about the alleged negligent act no later than December 13, 1987. The negligent act, if any, had to occur during the first surgery, a date that is ascertainable. The limitation period, therefore, ran from the date of the tort, October 29, 1987, and the Osbornes filed their suit too late.

 The Osbornes also claim the trial court erred in granting summary judgment because appellees did not move for summary judgment on the Osbornes' claims for fraud against Doctors Bowman and Cooley and violations of the Deceptive Trade Practices— Consumer Protection Act[14] against the Texas Heart Institute and Doctor Cooley. This claim is without merit because these claims were not raised in the Osbornes' live petition at the time the trial court ruled on the motion for summary judgment. *Mathew v. McCoy,* 847 S.W.2d 397, 400–01 (Tex.App.— Houston [14th Dist.] 1993, no writ). The Osbornes attempted to raise the fraud claim in their December 18, 1991 and March 11, 1994 motions for new trial, both of which the trial court overruled.[15] The Osbornes also allege they raised the DTPA claim in their December 18, 1991 motion for new trial, but we see no evidence of this claim in the motion.

We overrule the Osbornes' sole point of error, and we affirm the trial court's take-nothing summary judgment.

---

14. Tex.Bus. & Com.Code §§ 17.41–.63 (1987 & Supp.1996).

15. The Osbornes did raise the issue of fraudulent concealment in their live petition as an equitable estoppel to the affirmative defense of limitations, but did not raise fraud as a separate claim. *See Borderlon v. Peck,* 661 S.W.2d 907, 908–09 (Tex. 1983). The Osbornes have not complained on appeal that they raised a fact issue as to the issue of fraudulent concealment which would defeat the motions for summary judgment.