## LOCKEY et al. v. PACKARD–DALLAS, Inc.

### No. 12417.

Court of Civil Appeals of Texas. Dallas.

June 18, 1938.

Rehearing Denied Aug. 3, 1938.

Thompson, Knight, Baker, Harris & Wright, of Dallas, for appellants.

Coke & Coke, Thos. G. Murnane, and Arthur Hamilton, all of Dallas, for appellee.

BOND, Chief Justice.

This suit was instituted by Savannah Cross Lockey, joined pro forma by her husband, E. D. Lockey, Jr., for her own benefit and for the use and benefit of Camden Fire Insurance Association, against Packard-Dallas, Inc. The suit grows out of an accident resulting in damage to a Packard automobile owned by Mrs. Lockey. The Camden Fire Insurance Association carried liability insurance on the automobile and, after the accident, paid to said owner $400.25 and took an assignment and subrogation receipt of plaintiff's cause of action against defendant, to the extent of the amount paid. The cause being tried to a jury, at the conclusion of the testimony, on defendant's motion, the court instructed a verdict for the defendant; accordingly entered judgment.

The evidence shows that plaintiff purchased the automobile in the State of New York, drove it to Texas and en route became dissatisfied with its performance. She was accompanied on the trip by Mr. Lockey, to whom she was then engaged and afterwards married. On arrival to East Texas, the automobile was turned over to Mr. Lockey, who drove it to defendant's place of business in Dallas, into its Service Department, for adjustments. Mr. Lockey testified:

"I told the first man I talked to in the Packard Service Department that the car was sluggish, a vapor-lock, and he said that they would attend to it. I went down to the doctor; my brother went with me; took perhaps three or four hours before I came back to the Packard place; I asked whoever was in charge of the Service Department for my car and he delivered it to me * * *".

On the next day, Mr. Lockey returned the automobile to the defendant's place of business and turned it over to the defendant. Mr. Lockey testified:

"On that second trip, I talked to whoever was in charge of the Service Department; there was one man there, I don't remember his name, and sometimes to another man who was with Mr. Bridewell * * *. I talked to Mr. Bridewell (manager of the Service Department), and also to Mr. Haggard (Assistant Service Manager), if that is the man's name who was in charge in Bridewell's absence. On that second trip, I had the same complaint, or rather it had no vapor-lock, the motor was still sluggish, and I suggested that perhaps it was the timing on the car that needed advancing a little * * *; they took the car upstairs and I waited downstairs * * *. I complained about the sluggishness of the car; all I talked about to Mr. Bridewell and to Mr. Haggard was having a sluggy car. When the car was brought down it was rolled up to where I was standing, at the Parts Department near the back door; Mr. Bridewell was driving the car and Mr. Eveland (Packard factory man) and I were standing on the floor. I did believe they were going to take the car out on the road and try it out, but nothing was said about it that I recall; when Mr. Bridewell rolled the car up opposite to where Mr. Eveland and I were standing; he asked Eveland to come on and go with him; he didn't say a word to me. I said nothing, got in the car and went with them".

The evidence further shows that, the automobile was driven by Bridewell directly to the spot where the accident happened, and there is no substantial dispute as to the manner in which the accident occurred —Bridewell, driving at a terrific rate of speed at the intersection of two public highways, crashed into a telephone pole and railroad sign-post, killing himself, severely injuring Eveland, and slightly injuring Lockey, and damaging plaintiff's automobile to an amount of $500.

It is clear that defendant's liability rests upon the principle of bailment. If the

acts, words and conduct of Lockey, on the return of the automobile, commanded the defendant to repair ot adjust the automobile belonging to plaintiff; and the defendant, in furtherance of such command, was guilty of negligence in the performance of the undertaking, proximately causing the damage to the automobile, then liability for such damage is assured. The evidence, we think, clearly raises the issue, if not conclusive, that the object of Lockey in taking the automobile to defendant's place of business, both on the first and second occasions, was to have it adjusted for sluggishness and vapor-lock, or whatever was needed to correct its retarded speed. True, the bailment resulting from the first visit terminated when the automobile was adjusted and released to the owner or to her agent, Mr. Lockey; the first visit is interesting here only as tending to show the object of the second visit and the defendant's purpose in taking possession of the automobile and in driving it to the place of the accident. We think the acts, words and conduct of the parties on the first visit, cannot be disassociated with the acts, words and conduct of the parties on the second visit. On the first visit, the Packard-Dallas Company attempted to correct the automobile's sluggishness and vapor-lock, which the owner complained retarded its pick-up or speed; and, on the second visit, Mr. Lockey, on entering the defendant's place of business, advised its agent in authority that the performance of the automobile in regard to sluggishness and speed retard, was no better than on the first visit; he vacated the automobile, and the defendant's agents took it upstairs to its Service Department, and soon thereafter brought it down, inviting the factory representative (Mr. Eveland) to accompany him.

██ In view of the instructed verdict, we fail to see how it can be seriously contended that the evidence, which must be considered most favorable to plaintiff, does not raise an issue of bailment. We think the act and conduct of the parties clearly show that Mr. Lockey, acting for the owner, returned the automobile to defendant's place of business for adjustment, which the defendant on the day before had failed to correct; and the circumstances strongly raise the issue that the automobile, at the time of the accident, was being driven by Mr. Bridewell in furtherance of the undertaking.

██ It is further contended that Mr. Lockey's presence in the automobile, at the time of the collision, and he having an opportunity but failed to give warning of the dangerous rate of speed the automobile was being driven, any negligence of the driver is imputed to him. The theory is advanced on the idea that Bridewell and Lockey were on a joint enterprise, ascertaining the defects, if any, in the performance of the automobile. The law is well settled that, in a joint enterprise the negligence of one of the participants, resulting in injury to the other, is not imputed to the injured party. This is settled in the case of Rankin v. Nash-Texas Co., Tex.Com.App., 105 S. W.2d 195, in which it was held that the question of control and defense of a joint enterprise is not available to absolve one party from the consequences of his own negligence, by imputing it to another party whom it has injured. The court said (page 199):

"Furthermore, if it is assumed that Mrs. Rankin and Nash-Texas Company were engaged in a joint enterprise, the controversy here is between the parties to the enterprise, and the doctrine may not be invoked to absolve one of such parties from the consequences of his own negligence by imputing it to the other party whom it has injured. See Imputed Contributory Negligence by W. Page Keeton, 13 Texas Law Review, pp. 161, 163, 164; Bushnell v. Bushnell, 103 Conn. 583, 131 A. 432, 44 A.L. R. 785".

In the light of the record here presented, we are of the opinion that the trial court erred in instructing a verdict in the case. The facts raise the issue of negligence compensable on the issue of bailment; therefore, the judgment of the court below is reversed and cause remanded.

Reversed and remanded.

### On Rehearing.

Able counsel for appellee seriously contends that there is no substantial testimony to justify an issue to be submitted to the jury on the question of bailment, based on an understanding of the parties to correct a deficiency in the motor operation in appellant's automobile. In the view we take of this case, it is only proper to here relate the evidence which merely raises the issue, without comment on its weight: A. D. Lockey Jr.'s testimony relates the automo-

bile's performance in coming from New York to Texas—that it was sluggish; apparently so; had a vapor-lock, that is, "when the gasoline boils in the line the motor stops", and then he testified as follows:

"Q. What did you decide to do with the car after you got here (Texas)? A. Bring it to Dallas to be fixed * * *.

"Q. When did you bring it to Dallas * * *. I mean about when? A. About June 10th or 11th * * *.

"Q. After you got here, what did you do with the car? A. Carried it down to Packard-Dallas to be fixed.

"Q. Do you know who you gave it to there? A. Mr. Bridewell was acting—so I understood, was acting as service manager.

"Q. Did you explain to him what the trouble was with the car? A. Well, yes.

"Q. How long did he keep it? A. I forgot. It was part of that day. They didn't or they couldn't finish it that day, and my brother had to go back to Winnsboro, and so I remained in Dallas and he took the car to Winnsboro and then came back with it, either the next day or the next.

"Q. The next day or the day after, the car still wasn't fixed at that time? A. No.

"Q. What did you do when you got it back in Dallas again? A. Carried it back to Packard-Dallas.

"Q. And turned it over to them? A. Yes.

"Q. Did you remain there? A. Oh, two or three hours, I can't remember a lot of that, my memory is hazy * * *."

On cross-examination he testified further:

"Q. What did you say to the Packard people that second trip? A. I had the same complaint or rather it hadn't vapor-locked but the motor was still sluggish and I even suggested that perhaps it was the timing on the car that needed advancing a little * * *.

"Q. Where did they take the car? A. Upstairs.

"Q. And you waited—A. Downstairs.

"Q. You were sitting there waiting? A. At the time they brought it down I was standing there waiting, talking to Mr. Eveland.

"Q. Isn't it a fact that you and Mr. Eveland had already discussed taking that car out on the road and trying it? A. I don't remember having discussed trying it out * * *.

"Q. Had you said anything to anybody about taking the car out? A. However, I did believe they were going to do such a thing".

The evidence is undisputed that, when the car was driven down from upstairs, Mr. Lockey got into the automobile without invitation from anyone and rode to the place of the accident.

It is our opinion that the above testimony and the testimony related in our original opinion tends clearly to prove, and is at least sufficient to raise the issue of bailment, based upon the undertaking by the Packard-Dallas Company to correct whatever deficiency in the automobile's motor operation that was necessary and a reasonable inference that, at the time of the accident, the control and operation of the automobile was under the domination of Mr. Bridewell, the service manager of the Packard-Dallas Company, and that it was being operated by him in furtherance of such bailment; the negligence of the operator, if any, cannot be imputed to Mr. Lockey.

Appellee's motion for rehearing is overruled.