CESSNA AIRCRAFT COMPANY and
Associated Aviation Underwriters,
Inc., Appellants,

v.

AIRCRAFT NETWORK,
L.L.C., Appellee.

No. 05–04–01056–CV.

Court of Appeals of Texas,
Dallas.

March 16, 2006.

Rehearing Overruled Sept. 8, 2006.

Fred J. Meier, Winstead Sechrest & Minick, and Jonathan Jay Cunningham, Dallas, for Appellant.

J. Robert Arnett II, Arnett, Gaubert, LLP, Dallas, for Appellee.

Before Justices MORRIS, WRIGHT, and RICHTER.

## OPINION

Opinion by Justice WRIGHT.

Cessna Aircraft Company and Associated Aviation Underwriters, Inc. (AAU) appeal a trial court's judgment following a jury trial. AAU contends that Aircraft Network lacks standing to sue AAU. Alternatively, AAU asserts the evidence is legally and factually insufficient to support the jury findings for breach of contract, fraud, negligent misrepresentation, and exemplary damages. Cessna asserts: (1) the evidence is legally and factually insufficient to support jury findings for breach of contract, negligent misrepresentation, and breach of the implied warranty for good and workmanlike manner; (2) the trial court improperly submitted certain questions to the jury; (3) the trial court erred in awarding attorney's fees. In a cross-point, Aircraft Network contends the award for promissory estoppel should be reinstated should this Court reverse the award for breach of reimbursement contract. In a single point of error on cross-appeal, Aircraft Network contends the trial court erred in failing to offset the awards in favor of Cessna.

For the reasons that follow, we affirm in part, reform in part, reverse and render in part, and reverse and remand in part. We sustain AAU's first point of error, reverse the trial court's judgment with respect to AAU, and render judgment that Aircraft Network take nothing on its claims against AAU. We sustain Cessna's first point of error to the extent it complains about the submission of the damages question and reform the judgment to delete a portion of the damages awarded for breach of bailment contract. We sustain Cessna's second, third, and fourth points of error, reverse the trial court's judgment on the claims for breach of reimbursement contract, negligent misrepresentation, and breach of implied warranty, and render judgment that Aircraft Network take nothing on those claims. We sustain Aircraft Network's cross-point and reinstate the jury award for promissory estoppel. We reverse the awards of attorney's fees and costs and remand those issues to the trial court for proceedings consistent with this opinion. In all other respects, the trial court's judgment is affirmed.

### Background

Aircraft Network owned a Cessna Citation III jet aircraft. In June of 2000, while on a trip to California, the aircraft developed problems. On June 13, 2000, Chuck Weese, pilot of the aircraft, took it to the Cessna service center in Long Beach, California for minor repairs. While

repairing the aircraft, a Cessna employee accidentally damaged the tail section of the aircraft when he jacked up the nose of the aircraft while the tail stand was still in place.

Cessna readily accepted responsibility for the damage to the aircraft caused by its employee. The damage to the aircraft rendered it unairworthy. John Sloan, the maintenance manager at the Long Beach service center, informed Weese that Cessna would replace the entire skin panel. However, it would take about six weeks to obtain the necessary parts. In the meantime, Sloan advised Weese that Cessna had an interim repair that it could make so that they could fly the aircraft while waiting for the parts.

Stevan Hammond, president of Aircraft Network, had planned a business trip to Europe in July. Hammond decided that he would not be comfortable taking the aircraft with an interim repair to Europe. Accordingly, Aircraft Network declined the interim repair and opted to wait on the permanent repair. Weese then flew the aircraft on a special flight permit back to Dallas where it was scheduled to have avionics work. The permanent repair would then be made at the Cessna service center in Wichita, Kansas.

Preparing for its trip to Europe, Aircraft Network located a Gulfstream II that it could lease for the trip. Paul Martin, claims attorney for AAU, informed Aircraft Network that it would pay the costs of substitute transportation on a "differential of operating costs" basis. On July 12, 2000, Martin sent a letter to Aircraft Network stating that AAU would support the European trip "provided that the operating costs you would have incurred, but for the damage to your aircraft, are deducted from the costs of the G–II." Aircraft Network took the European trip in the G–II.

Aircraft Network also chartered other flights for business purposes. Aircraft Network tendered invoices for its chartered flights without any deduction for normal operating costs. A dispute arose as to costs covered for the chartered flights. Aircraft Network refused any payment offered by Cessna in return for a partial release of its claims.

Aircraft Network filed this lawsuit alleging claims against Cessna for negligence, breach of bailment contract, breach of contract for reimbursement, promissory estoppel, fraud, negligent misrepresentation, and breach of implied warranties. Aircraft Network asserted claims against AAU for breach of reimbursement contract, promissory estoppel, fraud, negligent misrepresentation, and Insurance Code violations. Cessna filed a counterclaim against Aircraft Network for breach of contract for failure to pay for past services.

At the conclusion of the trial, the jury found in favor of Aircraft Network on its claims against Cessna for negligence,[1] breach of bailment contract, breach of reimbursement contract, negligent misrepresentation, and breach of implied warranty. The jury also found in favor of Aircraft Network on its claim against AAU for breach of reimbursement contract, fraud, and negligent misrepresentation. Cessna recovered on its counterclaim. The trial court rendered a judgment on the jury verdict awarding damages, exemplary damages, and attorney's fees to Aircraft Network and damages to Cessna on its counterclaim. This appeal timely followed.

1. The trial court required Aircraft Network to make an election of remedies between the negligence and breach of bailment contract causes of action. Aircraft Network elected the breach of bailment contract award.

### Standing to Sue AAU

■ Initially, we address AAU's assertion that Aircraft Network lacks standing to sue AAU because a third-party claimant cannot sue an insurer.

Potential conflicts arise with respect to an insurer's duty to its insured when a third-party sues the insurer directly. The supreme court has addressed these concerns when considering whether a third-party claimant has standing to sue an insurer. *See Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269 (Tex.1995); *Allstate Ins. Co. v. Watson*, 876 S.W.2d 145 (Tex. 1994). In *Faircloth*, a woman was killed in a car accident involving Allied Van Lines. Allied's insurer, Transport Insurance Company, entered into a $250,000 settlement agreement with Paula Faircloth, a minor thought to be the daughter of the deceased. Upon reaching the age of majority, Faircloth sued Transport for unfair settlement practices. The supreme court held that third-party claimants lack standing to sue an insurer for a claim for breach of the duty of good faith and fair dealing. *Id.* at 279. The supreme court noted that the insured's interests are adverse to those of a third-party claimant. If an insurer owes duties to a third-party, the insurer's duties to its insured would necessarily be compromised. *Id.*

■ *Watson* also involved a car accident. Watson sued Allstate, the other driver's insurer, alleging claims for unfair settlement practices under the insurance code. *Watson*, 876 S.W.2d at 146. The supreme court held that a third-party claimant cannot sue an insurer for unfair settlement practices under the insurance code. *Id.* at 149. In so holding, the supreme court explained that allowing a third-party claimant to sue insurers would undermine the duties that insurers owe to their insureds. "An insurance company owes to its insured a duty to defend *against* the claims asserted by a third party." *Id.* at 150 (emphasis in original).

Aircraft Network relies primarily on one case to support its contention that it does have standing to sue AAU. *See Webb v. International Trucking Co., Inc.*, 909 S.W.2d 220 (Tex.App.-San Antonio 1995, no writ). *Webb* involved an accident between two truck drivers. One truck was owned by International Trucking (Trucking). The other truck involved in the accident was owned by Williams Drilling Company (Williams). Prior to liability being determined, the adjuster for Williams's insurer told Trucking that the insurer would pay for the damages to its truck and instructed Trucking to have it repaired at a certain service facility. *Id.* at 223. Relying on the insurer's statement, Trucking had its truck repaired. Subsequently, the insurer determined that its driver was not at fault and, therefore, refused to pay Trucking's repair bill. Trucking sued the insurer for DTPA and insurance code violations. Summary judgment was granted on the insurance code violations and the jury found in favor of Trucking on the DTPA claims. *Id.* at 224.

On appeal, the insurer asserted that Trucking, a third-party claimant, lacked standing to sue it. The court of appeals distinguished *Watson* and *Faircloth* on the ground that the claims in both of those cases were based on unfair claim settlement practices. *Id.* at 224–25. Significantly, the facts giving rise to the claims in *Webb* occurred *prior* to liability being either determined or reasonably clear and, therefore, outside the context of settlement negotiations. An insurer does not settle a claim for which its insured is not liable. An insurer engages in settlement practices at the point that liability is determined or becomes reasonably clear.

In an effort to fit this case into the *Webb* analysis, Aircraft Network couches its claims as a separate agreement between itself and AAU outside the context of any settlement negotiations. The facts, however, are against such assertion. Aircraft Network's claims arose from AAU's attempts to settle those claims on behalf of Cessna, AAU's insured. Loss of use was one of the claims AAU was attempting to settle. Allowing a third-party to sue an insurer over matters arising while the insurer attempts to settle a claim on behalf of its insured highlights the concerns expressed by the supreme court in *Watson* and *Faircloth.*

In both *Watson* and *Faircloth,* liability had been determined or was reasonably certain when the facts giving rise to the claims against the insurer arose. In contrast, when the insurer made the statement upon which Trucking relied in *Webb,* liability had not been determined. In our case, liability was determined at the point of the accident. Cessna admitted its fault and never wavered from that position. Responsibility for the accident was never an issue. From the beginning, AAU was trying to settle a claim for which Cessna, its insured, was liable.

We hold that, under these circumstances, Aircraft Network lacked standing to sue AAU. Accordingly, we sustain AAU's first point of error. We reverse the trial court's judgment with respect to AAU and render judgment that Aircraft Network take nothing on its claims against AAU.

### Claims Against Cessna

### A. Standard of Review

In reviewing a legal sufficiency point of error, the reviewing court must consider only the evidence and inferences tending to support the challenged findings and disregard all evidence and inferences to the contrary. If there is more than a scintilla of evidence to support the challenged findings, the no evidence challenge fails. *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996). We may sustain a no evidence point only when the record discloses one of the following: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *See Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997).

When conducting a factual sufficiency review, we must consider all of the evidence, including any evidence contrary to the verdict. *Plas–Tex., Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989). Furthermore, we must reverse on the basis of factual insufficiency if the court's finding is so against the great weight and preponderance as to be manifestly unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986).

### B. Breach of Bailment Contract

### 1. Existence of Breach of Bailment Claim

In its first point of error, Cessna raises two arguments with respect to the breach of bailment claim. First, Cessna contends a breach of bailment claim is inapplicable to the facts of this case. Second, Cessna contends the trial court erred in submitting the breach of bailment claim.

■ Cessna contends Aircraft Network's claim is for breach of warranty. Because Aircraft Network has a breach of warranty claim, Cessna argues, a breach of bailment claim is not available. We disagree.

Cessna relies on *Southwestern Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572 (Tex. 1991) and *Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894 (Tex.App.-Houston [1st Dist.] 2002, no pet.) to support its claim. Cessna's reliance is misplaced. Both *FDP Corp.* and *Ellis* concern remedies available to buyers under the UCC. FDP sued Southwestern Bell Telephone for breach of an express warranty when the yellow pages advertisement it purchased failed to include a display as agreed to. *FDP Corp.*, 811 S.W.2d at 575. The supreme court held that if a seller fails to deliver goods, a buyer has a claim for breach of contract. *Id.* at 576. If, however, the seller delivers nonconforming goods, the buyer has a claim for breach of warranty. *Id.*

*FDP* does not hold, as Cessna contends, that a party with a breach of warranty claim may not also assert a breach of bailment contract claim. The supreme court stated: "Our first inquiry is whether FDP's allegations state a claim for breach of warranty, which is actionable under the DTPA, or *merely* a claim for breach of contract." *FDP*, 811 S.W.2d at 574. (emphasis added). "[W]e reject Bell's argument that its failure to publish the double quarter column display was *exclusively* a breach of contract." *Id.* at 576. (emphasis added).

In *Ellis*, a buyer purchased a rebuilt engine. The engine did not work properly and the buyer returned it several times for repairs. *Id.* at 895. The buyer sued alleging causes of action for breach of contract and breach of warranty. The seller obtained summary judgment. The court of appeals held that Ellis did not have a breach of contract claim because under the UCC the seller performed by delivering the engine to the buyer. *Id.* at 897. The holding in *Ellis* was based on the provisions of the UCC. In contrast to the par-

ties in *FDP* and *Ellis*, Aircraft Network and Cessna were not in a buyer/seller relationship governed by the UCC. We find no support for Cessna's contention that Aircraft Network is limited to a breach of warranty claim.

■■■ Cessna also contends that it did not have a bailor/bailee relationship with Aircraft Network. Cessna argues that no bailment exists because the aircraft was damaged while repair services were being performed. The existence of a bailor/bailee relationship, however, is not determined by the circumstances that bring about the damage or loss. Rather, we consider the following elements: (1) the delivery of personal property from one person to another for a specific purpose; (2) acceptance by the transferee of such delivery; (3) an agreement that the purpose will be fulfilled; and (4) an understanding that property will be returned to the transferor. *See Prime Products, Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 635 (Tex.App.-Houston [1st Dist.] 2002, pet. denied); *Sears, Roebuck & Co. v. Wilson*, 963 S.W.2d 166, 168–69 (Tex.App.-Fort Worth 1998, no pet.). A bailor/bailee relationship is not limited to circumstances where damage or loss to the bailed property comes about through no fault of the bailee.

This Court has found a bailor/bailee relationship where a car was damaged as it was being serviced. *See Lockey v. Packard–Dallas, Inc.*, 119 S.W.2d 150 (Tex.Civ. App.-Dallas 1938, writ dism'd). Mr. Lockey took the car to the dealership to have it serviced. He told the service manager that the car was sluggish. *Id.* at 151. In an effort to pinpoint the problem, an employee of the service center drove the car. While driving the car, the employee wrecked it. *Id.* This Court reversed a directed verdict for the dealership, holding that the facts raised an issue of bailment. *Id.* at 152.

The Austin court of appeals found a bailor/bailee relationship existed between an owner of an aircraft and a potential buyer. The potential buyer wrecked the aircraft as he was taxiing down the runway after landing. *Hastings v. Thweatt*, 425 S.W.2d 661, 662 (Tex.Civ.App.-Austin 1968, no writ). The court of appeals affirmed a judgment for the bailor holding the bailee liable for the damage to the airplane he had borrowed from plaintiff for the purpose of trying it out to determine whether he wanted to buy it. *Id; see also Wilson v. Chazanow*, 105 S.W.3d 21, 23–24 (Tex. App.-Corpus Christi 2002, no pet.) (bailor/bailee relationship where a jeweler sent a sapphire ring to another jeweler for resizing and sapphire was cracked while being resized).

Thus, we conclude there was a bailor/bailee relationship between Cessna and Aircraft Network. *See Lockey*, 119 S.W.2d at 152; *Hastings*, 425 S.W.2d at 662.

**2. Jury Submission of Bailment Claim**

**a. Submission of Liability Issue**

■ In its first issue, Cessna also contends the trial court erred in its submission of the bailment claim to the jury. We review claims of charge error for an abuse of discretion. *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990). In question four, the jury was asked whether Cessna failed to comply with the bailment contract. The instructions for that question included the following statement: "Cessna's failure to return the Aircraft or returned [sic] it in damaged condition creates a rebuttable presumption that Cessna breached the bailment contract."[2] Cessna contends this statement in the instructions was improper because whether the aircraft was *returned* in a damaged condition was a question of fact. We disagree.

Cessna contends the evidence is undisputed that the aircraft was not *returned* in a damaged condition because it was "ultimately" *returned* in the same condition following the permanent repair. Cessna asserts that its offer to immediately do the interim repair somehow vitiates the fact that the aircraft was damaged while in its possession. Cessna does not cite any authority to support its position. Cessna's focus on the condition of the aircraft when it was *ultimately returned* is misplaced. Aircraft Network took the aircraft to the Long Beach service center for a minor repair. Cessna admittedly damaged the aircraft, and it is undisputed that the aircraft was *initially returned* in a damaged condition. Aircraft Network had to obtain a ferry permit to fly the plane back to Dallas because the plane was rendered unairworthy by the damage caused by Cessna. An offer to repair or subsequent repair of the damage does not change that fact.

We conclude the trial court did not abuse its discretion in submitting question four to the jury.

2. *QUESTION NO. 4:*
 Did Cessna fail to comply with the bailment contract it entered with Aircraft Network? Answer ("YES" or "NO"): Yes
 *INSTRUCTIONS FOR QUESTION NO. 4*
 If Cessna and Aircraft Network entered a bailment contract concerning the Aircraft, and both were to benefit from the contract, Cessna owed a duty to exercise ordinary care for the Aircraft.

 "Ordinary Care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.
 Cessna's failure to return the Aircraft or returned [sic] it in damaged condition creates a rebuttable presumption that Cessna breached the bailment contract.

### b. Submission of Damages Issue

■ Cessna also contends the trial court erred in submitting the damages question for breach of the bailment contract to the jury.[3] Cessna contends that Aircraft Network cannot recover damages for both the amount it actually expended in securing substitute transportation and also the cost it would have incurred in the alternative in securing a replacement aircraft on a monthly basis as "loss of use" damages. Aircraft Network counters that the damages are not duplicitous because damages for the value of the aircraft to Aircraft Network differs from the replacement value.

■ Damage awards are duplicitous if they compensate a party for the same injury. *See Waite Hill Services, Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex.1998); *City of San Antonio v. Guidry*, 801 S.W.2d 142, 150 (Tex.App.-San Antonio 1990, no writ) For example, the recovery of both lost profits and damage to business reputation could easily be duplicitous. *See Nelson v. Data Terminal Systems, Inc.*, 762 S.W.2d 744, 748 (Tex.App–San Antonio 1988, writ de-

nied). However, a plaintiff may recover for both lost profits and injury to business reputation if the damages cover different time periods or apply to different markets. *See Guidry*, 801 S.W.2d at 150. Thus, recovery for both lost profits and injury to business reputation are not necessarily duplicitous, but may be so depending on the evidence.

■ Just as damages for loss of business reputation and lost profits may be duplicitous, so too can damages for loss of value and loss of use. The usual measure of damages for loss of use of injured property is the reasonable cost of renting a replacement. *Luna v. North Star Dodge Sales, Inc.* 667 S.W.2d 115, 119 (Tex.1984). Where property is not rentable, the plaintiff may resort to proving the actual worth of use. *See Goose Creek Consol. Ind. Sch. Dist. of Chambers and Harris Counties, Texas v. Jarrar's Plumbing, Inc.*, 74 S.W.3d 486, 497 (Tex.App.-Texarkana 2002, pet. denied). It is error to admit evidence of both rental costs and replacement costs for loss of use of damages. *Hyder–Ingram Chevrolet, Inc. v. Kutach,*

**3. *QUESTION NO. 5:***
What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Aircraft Network for its damages, if any, that resulted from such failure to comply?

Consider the following when calculating these damages. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find. Do not include in your answer any amount that you find Aircraft Network could have avoided by the exercise of reasonable care.

a. Damages arising from loss of the use of the Aircraft, including, but not limited to the following:
(1) the costs associated with utilizing substitute aircraft
Answer in dollars and cents, if any.
Answer: 210,517.66
(2) loss of use of the Aircraft

Answer in dollars and cents, if any.
Answer: 166,000.00
(3) lost charter revenue
Answer in dollars and cents, if any.
Answer: –0–
b. Decrease in the Aircraft's market value as a result of damage thereto
Answer in dollars and cents, if any.
Answer: 180,000
*INSTRUCTIONS FOR QUESTION NO. 5*
"Market value" means the amount that would be paid in cash by a willing buyer who desires to buy, but is not required to buy, to a willing seller who desires to sell, but is under no necessity of selling.

For "Loss of use" consider the reasonable value of the use of an airplane in the same class as the Aircraft for the period of time required to repair the damage, if any, caused by the occurrence in question.

612 S.W.2d 687, 689 (Tex.App.-Houston [14th Dist.] 1981, no writ).

An award for the loss of having an aircraft available twenty-four hours a day, seven days a week necessarily includes damages for substitute transportation. The damages sought by Aircraft Network for the costs of substitute transportation and loss of the value of the aircraft cover the same time period. Under these circumstances, we conclude the trial court erred in its submission of question five. Further, we conclude Aircraft Network cannot recover damages on its breach of bailment contract claim for both the costs of obtaining substitute transportation and for the value of the aircraft during the same time period. Accordingly, we sustain Cessna's first point of error to the extent that we reform the award for breach of bailment contract to delete the damages in the amount of $166,000. In all other respects, Cessna's first point of error is overruled.

### C. Reimbursement Contract

■ In its second point of error, Cessna contends the evidence is legally and factually insufficient to support the jury's finding of breach of reimbursement contract. Specifically, Cessna contends the evidence is insufficient to establish the elements of a contract.

■ The elements of a valid contract include: (1) an offer; (2) acceptance; (3) meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Prime Products, Inc.*, 97 S.W.3d at 636. In determining the existence of an oral contract, the court looks to the communications between the parties and to the acts and circumstances surrounding the communications. *Id.*

■ Cessna asserts the evidence is insufficient to establish a contract because any offer lacked consideration, there was no acceptance of any offer, and there was no meeting of the minds. We focus our attention on the element of acceptance. An acceptance must be identical to the offer, or there is no binding contract. *See Long Trusts v. Griffin,* 144 S.W.3d 99, 111–12 (Tex.App.-Texarkana 2004, pet. filed).

In its brief, Aircraft Network argues that "the correspondence, conversations, and testimony of [Richard] Burton [in-house counsel for Aircraft Network] showed that Cessna accepted Aircraft Network's terms for reimbursement." Aircraft Network does not provide record citations to support this statement. And our review of the record shows that the parties did not come to a meeting of the minds with respect to the costs to be reimbursed and that Aircraft Network did not accept any offer by Cessna.

In his July 12, 2000 letter, Martin confirmed that Cessna would reimburse Aircraft Network for its trip to Europe on a differential of costs basis. Aircraft Network persisted in its request to have an airplane available twenty-four hours a day, seven days a week. On September 8, 2000, Lonnie Joe, supervisor of accounting at Cessna, had a phone conversation with Hammond and Weese. Joe informed them that Cessna would not agree to pay to have an airplane available to Aircraft Network twenty-four hours, seven days a week. Joe did state that Cessna would pay one-hundred percent of costs of substitute transportation from September 8, 2000 until repair of the aircraft was completed.

Burton testified that he submitted the invoice for the European trip after September 8, 2000. The invoice included all costs of the trip with no deductions for

costs that Aircraft Network would have incurred had it taken its own aircraft. Burton testified that he felt Cessna's September 8th commitment to pay one-hundred percent of costs included all chartered trips, not just those trips occurring after September 8th. He stated: "My point was, and still is, that's an arbitrary period of time. September 8th through September 25th was just picked out of the hat, there is no rhyme or reason to it. If it's reasonable for that period of time, it's reasonable for the entire period of time our plane is down. By Paul Martin basically stating to me that the reason why they chose that concept was to try to compensate us for this loss of 24–7, to me, of course we thought it was reasonable, and in my opinion AAU had determined it was reasonable by saying for a certain period of time they're going to do it. I just thought it should be pulled not just from that arbitrary period of time, but it should cover the entire three months our plane was down."

Aircraft Network contends Martin's July 12, 2000 letter constituted a reimbursement contract. Martin stated in the letter that Cessna would reimburse Aircraft Network for its charter flight to Europe on a differential of cost basis. An essential term to the alleged contract was reimbursement of costs on a differential of cost basis. Aircraft Network took the trip to Europe and in September submitted its invoice for one-hundred percent of costs. Burton testified that after the July 12th letter, he continued to negotiate with Martin regarding the extent of reimbursement. Because of these negotiations, Burton believed that Joe's promise on September 8th to cover one-hundred percent of costs for chartered flights included the chartered flights for the months of July and August as well. We conclude the evidence is factually insufficient to show: (1) that Aircraft Network accepted the offer made by Martin on July 12th; or (2) that the parties had a meeting of the minds as to an essential term of the alleged reimbursement contract—the costs that would be reimbursed.

We sustain Cessna's second point of error. We reverse the trial court's award of damages for the breach of reimbursement contract claim and render judgment that Aircraft Network take nothing on that claim.

## D. Negligent Misrepresentation

In its third point of error, Cessna contends the evidence is legally and factually insufficient to support a cause of action for negligent misrepresentation. Specifically, Cessna contends the evidence is insufficient because a negligent misrepresentation claim cannot be based on a promise of future performance and such claim must be supported by an independent injury.

In its fourth amended petition, Aircraft Network asserted its claim for negligent misrepresentation in the alternative to its claims for breach of reimbursement contract, promissory estoppel—reimbursement, and fraud—reimbursement. A party may plead alternative theories of recovery, present the facts as it understands them to be, and recover under any one of their theories. *Bantuelle v. Williams,* 667 S.W.2d 810, 819 (Tex.App.-Dallas 1983, writ ref'd n.r.e.).

To recover on a claim for negligent misrepresentation, there must be an injury independent of damages for the breach of contract claim. *See D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.,* 973 S.W.2d 662, 663–64 (Tex.1998); *Blue Star Operating Co. v. Tetra Technologies, Inc.,* 119 S.W.3d 916, 922 (Tex.App.-Dallas 2003, pet. denied). The facts in *Blue Star* are analogous to the facts in this case. Blue

Star alleged a claim of negligent misrepresentation against Tetra for failing to disclose the possibility of significant filtration losses. Blue Star asserted that it relied on the misrepresentation in entering the contract. *Blue Star*, 119 S.W.3d at 922. However, this Court upheld the directed verdict in favor of Tetra on this claim because Blue Star did not cite to any evidence regarding any injury it suffered or damages it sought as a result of Tetra's alleged failure to disclose that was independent from its breach of contract claim. *Id.*

Aircraft Network's claim for negligent misrepresentation does not involve an injury independent from the injury alleged for its claim for breach of reimbursement contract. Both claims are based on the same factual scenario that Cessna promised to reimburse Aircraft Network for substitute transportation, Aircraft Network incurred costs in reliance on that promise, and Aircraft Network sustained damages when Cessna breached its promise.

Consequently, we conclude there is no evidence to support the submission of the negligent misrepresentation claim to the jury. We sustain Cessna's third point of error, reverse the trial court's judgment with respect to the negligent misrepresentation claim, and render judgment that Aircraft Network take nothing on its negligent misrepresentation claim.

### E. Implied Warranty of Good and Workmanlike Manner

In its fourth point of error, Cessna contends the evidence is legally and factually insufficient to support the award for breach of implied warranty.

The jury found that Cessna breached the implied warranty of performing services in a good and workmanlike manner and assessed $142,000 in damages for that breach. Cessna contends that the award for breach of the implied warranty amounts to a double recovery because the damages are subsumed in damages awarded for breach of bailment contract. Cessna further argues that Aircraft Network's recovery, if any, should be limited to the smaller award for breach of implied warranty. Although we agree that the two awards are duplicitous, we hold that the trial court erred in awarding damages for breach of implied warranty.

An implied warranty arises by operation of law as a matter of public policy. *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 353 (Tex.1987). There must be a compelling need to justify an implied warranty for service transactions. *Rocky Mountain Helicopters, Inc. v. Lubbock Cty. Hosp. Dist.*, 987 S.W.2d 50, 53 (Tex.1998). A compelling need for an implied warranty does not exist where other adequate remedies are available. *Id.* Where a party has negligence and/or breach of contract claims available to it, an implied warranty does not arise. *Id; see also Anthony Equip. Corp. v. Irwin Steel Erectors, Inc.*, 115 S.W.3d 191, 209 (Tex. App.-Dallas 2003, writ dism'd).

Aircraft Network asserted claims for negligence and breach of bailment contract. The jury found in favor of it and awarded damages on both of those claims. Under these circumstances, we hold that Aircraft Network does not also have a claim for breach of an implied warranty of good and workmanlike manner.

We sustain Cessna's fourth point of error. We reverse the award of damages for breach of the implied warranty of good and workmanlike manner and render judgment that Aircraft Network take nothing on that claim.

### F. Attorney Fees

In its fifth point of error, Cessna contends the trial court's award of attorney's

fees was erroneous. Specifically, Cessna contends Aircraft Network failed to properly segregate their fees among the different claims and the different defendants. We have reversed the trial court's judgment with respect to AAU and rendered judgment that Aircraft Network take nothing on its claims against AAU, reversed the award for breach of reimbursement contract and rendered judgment that Aircraft Network take nothing on that claim against Cessna. Thus, our holdings impact the amount of attorney's fees recoverable. Accordingly, we sustain Cessna's fifth point of error. We reverse the attorney's fee award and remand that issue to the trial court for proceedings consistent with this opinion.

### G. Costs

In its final point of error, Cessna asserts the trial court erred in awarding costs to Aircraft Network. The trial court awarded costs against Cessna and AAU jointly and severally. In light of this Court's holding that Aircraft Network take nothing on its claims against AAU, we remand the issue of costs to the trial court for proceedings consistent with this opinion. We sustain Cessna's sixth point of error.

### Aircraft Network's Cross–Point

 In a single cross-point, Aircraft Network asserts that if this Court sustains Cessna's point of error as to the breach of the reimbursement contract, then this Court should reinstate the jury award on its promissory estoppel claim. In response, Cessna contends that because there is no contract for reimbursement, there can be no claim for promissory estoppel. We disagree. A claim for promissory estoppel can only exist if there is no contract. *See Doctors Hospital 1997, L.P. v. Sambuca Houston, L.P.,* 154 S.W.3d 634, 636 (Tex.App.-Houston [14th Dist.] 2004, pet. filed).

We have held that the evidence is insufficient to support the jury's finding of a reimbursement contract. Thus, no reimbursement contract exists, and the jury found for Aircraft Network on its promissory estoppel claim. Cessna does not contend that the evidence is insufficient to support the jury's finding. Accordingly, we sustain Aircraft Network's cross-point and reinstate the award of damages for the promissory estoppel claim.

### Aircraft Network's Cross–Appeal

 In a single point of error, Aircraft Network contends the trial court erred in failing to offset the judgment awarded to Cessna on its counterclaim. Offset is required only where a defendant is awarded a judgment on its counterclaim that exceeds that established by the plaintiff. TEX.R. CIV. P. 302. Aircraft Network's recovery, at trial and following appeal, exceeds the recovery awarded to Cessna on its counterclaim. Accordingly, offset is not required and the trial court did not abuse its discretion in failing to offset the judgments. We overrule Aircraft Network's point of error on cross-appeal.

### Conclusion

We sustain AAU's first point of error and hold that Aircraft Network lacked standing to sue AAU. We reverse the judgment with respect to AAU and render judgment that Aircraft Network recover nothing on its claims against AAU. We sustain Cessna's first point of error to the extent it asserts error in the submission of the damages question on the breach of bailment contract claim. We reform the trial court's judgment to delete the $166,000 award for breach of bailment contract. We sustain Cessna's second, third, and fourth points of error and render

judgment that Aircraft Network recover nothing on its claims against Cessna for breach of a reimbursement contract, negligent misrepresentation, and breach of the implied warranty of a good and workmanlike manner. We sustain Aircraft Network's cross-point and reinstate the jury's award of $210,517.66 for promissory estoppel. Finally, we remand to the trial court the issues of attorney's fees and costs of proceedings consistent with this opinion. In all other respects, we affirm the trial court's judgment.