# NO. 12-20-00135-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *TRINITY COUNTY JUDGE DOUG PAGE, AS SUCCESSOR IN OFFICE TO COUNTY JUDGE MARK EVANS, APPELLANT* | § | *APPEAL FROM THE 258TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *LIBERTY PLANTATION, LLC D/B/A EAGLE FALLS, SOUTHWEST MARINE AND GENERAL INSURANCE COMPANY, APPELLEES* | § | *TRINITY COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Doug Page, as successor in office to Trinity County Judge Mark Evans, appeals the trial court's order granting summary judgment in favor of Liberty Plantation, LLC D/B/A Eagle Falls ("Liberty") and Southwest Marine and General Insurance Company ("Southwest Marine"). In what we construe as two issues, Page argues that the trial court erred in granting summary judgment in Appellees' favor. We affirm.

## BACKGROUND

Liberty, a residential real estate developer, owned a tract of land in Trinity County, Texas which it sought to develop into a residential lakefront subdivision to be called Eagle Falls. In August 2009, Liberty applied for a plat with Trinity County. In an effort to obtain Trinity County's approval of the plat, Liberty secured three performance bonds from Southwest Marine in the amounts of $524,000.00 for the construction of the water plant and distribution system, $442,400.00 for the road improvements, and $135,600.00 for the electrical distribution improvements. Trinity County's Subdivision Rules and Regulations require the county to execute

a subdivision construction agreement in substantially the form "in Appendix 2A" if, as here, the water facilities had not yet been completed prior to the time of plat approval. The parties did not execute a subdivision construction agreement, but nonetheless, Trinity County approved Liberty's proposed plat and the plat was filed of record in September 2009.

Liberty initiated construction of the roads and drilled test holes in anticipation of constructing the water plant and distribution system, but no water well was ever drilled. No electrical distribution improvements were ever made. Due to environmental and economic concerns, Liberty abandoned the project. Subsequently, a different developer purchased the land.

In July 2014, Page notified Southwest Marine that it was considering Liberty in default and sought payment of the bond amounts. In its response, Southwest Marine asked Page to provide it with a copy of the subdivision construction agreement referenced in the bonds, any amendments to the agreement, and other relevant documents. Page did not respond to the request or provide the construction agreement or other requested documents.

Liberty's sole member, Ryan Aikin, informed Southwest Marine that Liberty and Trinity County never actually entered into a construction agreement. At the time Liberty procured the bonds, Aikin believed that Liberty and Trinity County would enter into a construction agreement, at a later date, which would provide the infrastructure improvement specifications, the terms and conditions of performance, and the terms of default. According to Aikin, the values assigned to the improvements in the bonds were based upon estimated budgets created by Liberty and a consultant, and Trinity County was not involved in the process of determining the values.

In June 2015, Page sent Southwest Marine a letter stating that Liberty was in default and demanded Southwest Marine pay on the bonds in the amount of $1,101,600.00.[1] Southwest Marine did not pay the funds, and Page sued Liberty and Southwest Marine for breach of contract. In March 2019, Southwest Marine moved for traditional and no evidence summary judgment arguing that it was not liable on the bonds because Page produced no evidence that an enforceable contract was ever formed between Trinity County and Liberty and because Page produced no evidence of damages. The trial court granted Southwest Marine's motion without specifying its reasoning. Thereafter, Liberty moved for summary judgment on the same grounds asserted by

---

[1] In his letter, Page listed $442,000.00 as the amount for the road improvements bond, but the bond reflects $442,400.00 as the amount.

Southwest Marine which the trial court also granted.[2] Page filed a motion for new trial which was overruled by operation of law. This appeal followed.

## SUMMARY JUDGMENT

In his first issue, Page argues that the absence of a written construction agreement with Liberty is not fatal to Trinity County's claims because Trinity County is exercising its "police powers" and "enforc[ing] its laws to ensure Eagle Falls subdivision is properly developed so that the purchasers of those subdivided lots will finally have safe road access, proper drainage, drinking water and electricity." Page further argues that Trinity County "does not need to rely on the existence of a separate written agreement in order to enforce the law." Alternatively, Page argues that "[i]f [Trinity County] does not have the requisite police power to prevail without a separately executed written agreement, the agreement did exist through the form of multiple documents." Southwest Marine and Liberty argue that the trial court correctly granted summary judgment in their favor because Page was not able to offer evidence of an enforceable contract or any resultant damages.

### Standard of Review and Applicable Law

In a traditional motion for summary judgment, if the movant's motion and summary-judgment evidence facially establish its right to judgment as a matter of law, the burden shifts to the nonmovant to raise a genuine, material fact issue sufficient to defeat summary judgment. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). In reviewing a no-evidence summary judgment, we ascertain whether the nonmovant pointed out summary-judgment evidence raising a genuine issue of fact as to the essential elements attacked in the no-evidence motion. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 206–08 (Tex. 2002). In our de novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

---

[2] Claims for indemnity asserted by Southwest Marine against Liberty and other third party defendants were resolved by an agreed judgment in favor of Southwest Marine.

When a party files a hybrid summary-judgment motion on both no-evidence and traditional grounds, we first review the trial court's judgment under the no-evidence standard of review. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *All American Telephone, Inc. v. USLD Communications, Inc.*, 291 S.W.3d 518, 526 (Tex. App.—Fort Worth 2009, pet. denied); *E. Hill Marine, Inc. v. Rinker Boat Co.*, 229 S.W.3d 813, 816 (Tex. App.—Fort Worth 2007, pet. denied). If the non-movant failed to produce more than a scintilla of evidence under the standards of Rule 166a(i), then there is no need to analyze whether the movant's summary-judgment proof satisfied the less stringent burden set forth for traditional summary judgment under Rule 166a(c). TEX. R. CIV. P. 166a(c) & (d); *E. Hill Marine, Inc.*, 229 S.W.3d at 816.

The essential elements of a breach of contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach. *Tamuno Ifiesimama v. Haile*, 522 S.W.3d 675, 685 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.–Houston [1st Dist.] 2009, pet. denied). The elements required for the formation of a valid contract are: (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Levetz v. Sutton*, 404 S.W.3d 798, 803 (Tex. App.—Dallas 2013, pet. denied); *Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 465 (Tex. App.—Dallas 2006, pet. denied).

The liability of a surety is derivative in nature and depends on the principal's liability. *See Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415, 419 (Tex. 1995). A surety is entitled to rely upon all defenses available to their principal as to the debt owed to the bond obligee. *Id.* Thus, unless a cause of action exists against the principal, it cannot exist against the surety. *Girard Fire & Marine Ins. Co. v. Koenigsberg*, 65 S.W.2d 783, 786 (Tex. Civ. App.—Dallas 1933, no writ).

**Police Powers**

In what we construe as his first issue, Page argues that he did not need to offer evidence of an enforceable contract between Liberty and Trinity County in order to survive summary judgment. Page goes on to argue that this is "not a breach of contract case." However, he also states in his brief that there was an agreement between Liberty and Trinity County that Liberty

would properly develop the subdivision in exchange for Trinity County's approval of the plat. Page argues that, when Liberty "defaulted on its agreement to develop the subdivision and completely abandoned it, nothing short of a breach occurred." Nonetheless, in the next sentence Page states, "[i]n actuality, this case is solely about a Texas county's ability to exercise its police power against developers like Liberty when their plat is accepted and approved, but then fail to construct the necessary infrastructure required to the detriment of the health and safety of its citizens." In support of Page's argument, he cites to *Risinger v. Wilson County*, 961 S.W.2d 525 (Tex. App.—San Antonio 1997, pet. denied).

In *Risinger*, Wilson County, Texas authorities required the appellant/developer to obtain a one year letter of credit as security to build public roads for a subdivision. 961 S.W.2d at 525-26. When the developers failed to begin construction of the roads, the County called the letter, and the issuing bank paid the funds to the county. *Id.* at 526. Several years passed and after notes on the property were foreclosed upon, the property was eventually transferred to a separate entity. *Id.* Meanwhile, the County retained the funds and ear-marked them for the construction of roads in the proposed subdivision. *Id.* Thereafter, Risinger, the appellant/developer, sought a declaratory judgment that he was the rightful owner of the funds paid over by the bank to the county. *Id*. In light of the fact that *Risinger* involved a claim for a declaratory judgment and not a claim for breach of contract, we fail to see its significance here. In further support of its argument, Page cites to cases that stand for the proposition that "plat approval, like zoning, is an exercise of the police power." *City of Round Rock v. Smith*, 687 S.W.2d 300, 302 (Tex. 1985); *see Spann v. City of Dallas*, 111 Tex. 350, 355, 235 S.W. 513, 515 (1921). Page also points to Section 232.005 of the Texas Local Government Code, which allows the county attorney or prosecuting attorney for the county to file an action to recover damages for construction or other activity necessary to bring about compliance with applicable subdivision requirements. *See* TEX. LOC. GOV'T CODE ANN. § 232.005 (a) (West 2016).

While we agree with Page's statements that plat approval is an exercise of the County's police power, and further, that the local government code provides an independent cause of action for the County to bring suit to bring about compliance with applicable subdivision requirements, we fail to understand the significance of these arguments in this case. Page did not bring an action under Section 232.005, but instead sued Liberty and Southwest Marine for breach of contract. An essential element of that cause of action is, of course, the existence of a valid

contract. ***Tamuno Ifiesimama***, 522 S.W.3d at 685; ***B & W Supply***, 305 S.W.3d at 16. Page has cited no authority, nor is this Court aware of any authority, that supports his argument that he can maintain a breach of contract action in the absence of an enforceable contract by virtue of the county's "police powers." ***Tamuno Ifiesimama***, 522 S.W.3d at 685; ***B & W Supply***, 305 S.W.3d at 16; *see* ***Tex. Health Ins. Risk Pool v. Sigmundik***, 315 S.W.3d 12, 15 (Tex. 2010) (contractual rights arise from contract language; not from principles of equity). We conclude that, in order to survive summary judgment on a breach of contract claim, Page was obligated to establish that a fact issue existed with respect to whether Trinity County had an enforceable contract with Liberty. Thus, we overrule this portion of Trinity County's first issue.

**Alternative Argument that the Parties had an Enforceable Contract**

Alternatively, Page argues that "[i]f [Trinity County] does not have the requisite police power to prevail without a separately executed written agreement, the agreement did exist through the form of multiple documents." According to Page, the following separate documents embodied the contract and its essential terms: (1) the Trinity County Subdivision Rules and Regulations and Texas Local Government Code Chapter 232 (the rules); (2) the plat application documents; (3) the bonds; (4) the recorded plat; and (5) an unsigned copy of a form entitled "Subdivision Construction Agreement Sample Form." Page argues that these documents form an enforceable contract because, taken together, the documents establish all the material terms. According to Page, the scope and specification of the subdivision and its requisite infrastructure are contained in the plat; the means, methods, materials, location, and equipment are set forth in the application documents; the standards for roads and utility infrastructure are established by the Trinity County's subdivision rules and the local government code; and the estimated cost to perform the work is listed in the bonds.

Page acknowledges that Trinity County's own subdivision rules require the owner of a subdivided tract and the County execute an agreement in substantially the form "in Appendix 2A" if, as here, the water facilities had not yet been completed prior to the time of plat approval. Appendix 2A is entitled "Subdivision Construction Agreement Sample Form" and can be found in Section 364.54 of the administrative code. *See* 31 TEX. ADMIN. CODE § 364.54 (Tex. Water Dev. Bd., Financial Guarantees for Improvements). It is undisputed that the parties never signed this agreement, but a blank copy of the form is in the record. Nonetheless, Page argues that Appendix 2A forms part of the agreement because Liberty was "aware of such attachment and its contents

prior to receiving plat approval and aware of Trinity County's Rules requiring Liberty to execute it."

Appellees argue summary judgment in their favor was appropriate because Page did not meet his summary judgment burden, having failed to produce any evidence that an enforceable contract was ever formed between Liberty and Trinity County. Appellees argue Page failed to produce any evidence that a "meeting of the minds" occurred between Trinity County and Liberty as to the essential terms of the contract. *See **Levetz***, 404 S.W.3d at 803; ***Cessna Aircraft Co.***, 213 S.W.3d at 465. Appellees argue that the "county presented no evidence of an agreement to build infrastructure in exchange for approval of Liberty's plat...[b]ecause none of the documents offered, whether independently or in concert, lay out what the parties allegedly promised to do— the scope of work, the conditions of performance, the time of performance, the terms of default, or any of the other essential contractual terms..." Appellees also argue that summary judgment was proper in their favor because Page presented no evidence of contractual damages.

Appellees argue that none the of the documents that Page asserts form the contract show a promise by Liberty to construct the subdivision because Liberty's plans for the roadway and water system do not contain an offer to build the roads or the water system, nor do the documents demonstrate any evidence that the County accepted an offer from Liberty to build the roads or water systems. Further, Appellees argue that the scope and specification of the work is not sufficiently clear from the documents. Appellees point out that the rules allow for various road surfaces and water systems and contain no specified standards for electrical improvements. *See generally* TEX. LOC. GOV'T CODE ANN. § 232.001-.110 (West 2016 and West Supp. 2020). Appellees also point to the following evidence in the record that supports its position that no enforceable contract was ever formed between Trinity County and Liberty:

1. Aikin's affidavit wherein he states that "Trinity County and Liberty Plantation never entered into any formal written subdivision construction agreement detailing the necessary infrastructure improvements, terms, and conditions. Nor was there an oral agreement or any other writing detailing the terms and conditions of a subdivision construction agreement."

2. Page testified in his deposition that he was unaware of any contract between Liberty Plantation and Trinity County to construct improvements to the Eagle Falls Subdivision.

Appellees further argue that Page failed to meet his summary judgment burden by neglecting to produce the minutes of the commissioner's court meeting documenting its approval of a contract with Liberty.

A contract made by a county is valid and binding on the parties only if made under the authority of a resolution or order duly passed at a meeting of the commissioners' court and entered into the minutes. *See Hill Farm, Inc. v. Hill Cty.*, 425 S.W.2d 414, 418 (Tex. Civ. App.—Waco 1968), *aff'd*, 436 S.W.2d 320 (Tex. 1969); *see also City of Bonham v. Sw. Sanitation, Inc.*, 871 S.W.2d 765, 767 (Tex. App.—Texarkana 1994, writ denied) ("A city or county may contract only upon express authorization of the city council or commissioner's court by vote of that body reflected in the minutes."). Moreover, proof of the governing body's acts may only be supplied by the authenticated minutes of the meeting at which the action occurred, unless the minutes have been lost or destroyed. *City of Bonham*, 871 S.W.2d at 767; *Wagner v. Porter*, 56 S.W. 560, 561 (Tex. Civ. App. 1900, no writ). A plaintiff suing to establish a contract with the city has the burden to both plead and prove that the minutes show the council's act in authorizing or ratifying the contract. *City of Bonham*, 871 S.W.2d at 767.

We have reviewed all of the summary judgment evidence before the trial court. We agree with Appellees that Page failed to meet his summary judgment burden to offer more than a scintilla of evidence of an enforceable contract. *See* TEX. R. CIV. P. 166(i); *Johnson*, 73 S.W.3d at. 206–08; *E. Hill Marine*, 229 S.W.3d at 816. As previously discussed, a contract made by a county is valid and binding on the parties only if made under the authority of a resolution or order duly passed at a meeting of the commissioners' court and entered into the minutes; proof of this action must come from the authenticated minutes of the meeting at which the act occurred, unless the minutes have been lost or destroyed. Page did not offer minutes from the commissioners' court meetings into evidence. Unsigned agendas are the only evidence Page submitted regarding any action taken by the commissioners' court. None of the unsigned agendas discuss approving a construction subdivision agreement with Liberty. Without the authenticated minutes of the commissioner's court meeting that establish the County's acceptance of Liberty's offer, it cannot establish that it had a binding and enforceable contract. *See City of Bonham*, 871 S.W.2d at 767.

Further, we conclude that Appendix 2A—the unsigned sample construction agreement— was not executed. While the law does recognize that a contract can be executed without being signed if the parties manifest an intent to be bound through its action and words, we disagree that

8

Liberty manifested the requisite intent.  *See **Winchek v. Am. Exp. Travel Related Servs. Co., Inc.***, 232 S.W.3d 197, 204 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Page argues that Liberty "knew it would need to execute Appendix 2A...prior to obtaining plat approval" and "neither party, as evidenced by the plat's approval [sic] and signatures of Trinity County and Liberty thereon, insisted upon signing the Subdivision Construction Agreement as a condition precedent of plat approval."  Therefore, Page argues, Appendix 2A became binding even though it was not signed.   Page cites to Aikin's affidavit in support of its contentions.  Aikin states in the affidavit, in pertinent part, as follows:

> Liberty Plantation submitted an application for plat approval to Trinity County in August 2009.  The Trinity County Commissioner's Court reviewed the application on August 10, 2009 but did not grant approval.  I was later informed that Trinity County required a developer to submit a subdivision construction agreement, plats, maps and security for the subdivision construction agreement along with a plat application for the court to consider approving the plat.
>
> ....
>
> Trinity County and Liberty Plantation never entered into any formal written subdivision construction agreement detailing the necessary infrastructure improvements, terms, and conditions.  Nor was there an oral agreement or any other detailing the terms and conditions of a subdivision construction agreement.  When Liberty Plantation secured the bonds, I believed Liberty Plantation and Trinity County would enter into a subdivision construction agreement at a later date which would provide the infrastructure specifications and terms of default.
>
> ...
>
> On Sept. 22, 2009, the Commissioner's Court again conducted a hearing to discuss and act on Liberty Plantation's Plats, Maps, and Bonds.  The missing subdivision construction agreement was not discussed.

We disagree with Page's contention that Liberty manifested an intent to be bound by Appendix 2A simply because Aikin knew that Trinity County would require a subdivision construction agreement for plat approval.   Page has offered no authority, nor is this court aware of any authority, that supports this argument. Moreover, as previously discussed, the County could only execute Appendix 2A if made under the authority of a resolution or order duly passed at a meeting of the commissioners' court and entered into the minutes, of which it offers no evidence.

Further, Page failed to offer any evidence of damages.  Page argues that Trinity County is entitled to the reasonable cost of completing the improvements in conformance with its requirements, procedures, and specifications because "it now contains a substandard subdivision." Page argues that the estimated cost of the improvements as provided for in the bonds is prima

facie evidence of the minimum cost of completion and further, he points to an expert report opining on the costs of completing the minimum required infrastructure to finish the subdivision. But, as Appellees point out, Page "offers no argument or evidence about damages allegedly suffered as a result of a breach of contract." To prove an action for breach of contract, the plaintiff must establish that the defendant's breach caused its injury. *Southwell v. Univ. of Incarnate Word*, 974 S.W.2d 351, 355 (Tex. App.—San Antonio 1998, pet. denied). As Page points out, there is a statutory provision contained in the local government code which entitles a county to bring an action to recover damages in an amount adequate for the county to undertake any construction or other activity to bring about compliance with the rules. *See* TEX. LOC. GOV'T CODE ANN. § 232.005. However, Page did not bring suit pursuant to this statute, instead he brought a claim for breach of contract. Thus, Page was required to submit evidence of *contractual* damages. As Appellees point out, Page failed to offer any legal argument or evidence to establish that Trinity County has any obligation to build the infrastructure to complete the subdivision on the tract of land, which is now owned by a new developer.

As previously stated, a surety's liability is derivative in nature. Thus, if, as we have concluded, no enforceable contract exists between Liberty and Trinity County, then Southwest Marine is not liable on the bonds. *See **Koenigsberg***, 65 S.W.2d at 786. Because we conclude that Page failed to offer any evidence of an enforceable contract between Trinity County and Liberty or contractual damages, we hold that the trial court did not err in granting Appellees' motion for no evidence summary judgment. We overrule issue two.

## CONCLUSION

Having overruled both of Page's issues, we ***affirm*** the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered August 18, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

10



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 18, 2021**

**NO. 12-20-00135-CV**

**TRINITY COUNTY JUDGE DOUG PAGE, AS SUCCESSOR
IN OFFICE TO COUNTY JUDGE MARK EVANS,**
Appellant
V.
**LIBERTY PLANTATION, LLC D/B/A EAGLE FALLS,
SOUTHWEST MARINE AND GENERAL INSURANCE COMPANY,**
Appellees

Appeal from the 258th District Court
of Trinity County, Texas (Tr.Ct.No. 22171)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, all costs of this appeal are assessed against Appellant, **TRINITY COUNTY JUDGE DOUG PAGE, AS SUCCESSOR IN OFFICE TO COUNTY JUDGE MARK EVANS,** and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*